## THE O. H. JEWELL FILTER COMPANY
### *v.*
### JAMES S. KIRK *et al.*

*Opinion filed December 16, 1902.*

1. CONTRACTS—*contract of guaranty in the erection of filters construed.* Under a contract made by a filter company to place filters in a manufacturing plant, providing that "we guarantee the filtrate will be clear and bright for the purpose for which they are needed, to render the river water and the condensed water suitable for your boilers," etc., the water, when filtered, must be "clear and bright" and "suitable" for the boilers.

2. EVIDENCE—*evidence that other filters worked to the satisfaction of the parties is inadmissible.* In an action to recover the amount paid for filters upon the ground of a breach of warranty that the filtered water would be suitable for boilers, evidence that other filters of the same make, used for filtering the same kind of water at other places, did their work to the satisfaction of the parties and without objection on their behalf, is not admissible.

*Jewell Filter Co.* v. *Kirk*, 102 Ill. App. 246, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This is an action in assumpsit, begun in the circuit court of Cook county by appellees, James S. Kirk and others, co-partners doing business as James S. Kirk & Co., soap manufacturers, against the O. H. Jewell Filter Company, a corporation, to recover certain payments made by appellees for a large filtering apparatus which had been constructed by appellant for them, the declaration alleging that the filter was inefficient and not in accordance to the contract and guaranty under which the same was purchased.

The firm of James S. Kirk & Co. was conducting a soap factory on the Chicago river, about a quarter of a mile from Lake Michigan. The river water being polluted and unserviceable for use in the boilers of appellees

and hydrant water being too expensive, the company applied to appellant to put in filters. Thereupon appellant submitted a proposition to construct two gravity filters, (minutely describing their construction,) the concluding paragraphs of the proposition being as follows: "We guarantee the capacity of these filters, and that they will operate mechanically in a thorough and be built in a workmanlike manner. The filter-tanks proper will have to be built within the place where they are to be located, which work we would commence immediately after you have the foundations ready. It is also understood that you will provide the power for revolving the stirring apparatus. We will furnish the above for the sum of $2500. These filters would have an easy capacity of filtering 15,000 gallons per hour, which is more than fifty per cent above your actual requirements; and we guarantee the filtrate will be clear and bright for the purpose for which they are needed, to render the river water and the condensed water suitable for your boilers shall be accomplished: *Provided, however*, that occasionally, should the condition of the water require, that you will, in addition to the filters, use a small amount of coagulant for assisting in arresting the impurities, which might thus need to be retained upon the filtering bed." The proposition was accepted and the filters were constructed, being completed February 3, 1897. Between that time and the first of November following, appellees made several unsuccessful attempts at using the boilers, and so notified appellant from time to time, and on the latter date requested appellant to remove the filters and re-pay to them the total "amount due,"—which amount included $1750 paid on the contract and other items for expenses in connecting up the boilers, etc. The filters were not removed nor was the money paid, and thereupon this suit was brought.

The case was tried before the court, without a jury, and damages were awarded in the sum of $1996. The

plaintiff remitted the sum of $24.22, and judgment was rendered for the remainder of the amount, $1971.78. To reverse the judgment of the Appellate Court affirming the judgment below, this appeal is prosecuted.

BLACK & BLACK, for appellant.

HOLT, WHEELER & SIDLEY, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Counsel for appellant insist that when the contract is properly interpreted the filters were constructed in compliance with the guaranty, and therefore its interpretation becomes a question of law reviewable by this court. The construction insisted upon by them is, that the guaranty merely provided for the erection of filters, the province of which was not to render the water chemically pure, but to merely remove the suspended matter therefrom. On the other hand, appellees insisted below, and the cause was tried upon the theory, that the work of the filters did not conform to the specifications and the guaranty. The interpretation insisted upon by appellant is too narrow a view to take of the guaranty. Its language is: "We guarantee the filtrate will be clear and bright for the purpose for which they are needed, to render the river water and the condensed water suitable for your boilers shall be accomplished." True, the scope of this language is broad, but the parties have so contracted; and the meaning of the terms used being clear and obvious, they are not open to construction. Other parts of the guaranty, looking at the instrument as a whole, do not take away from the language just quoted its ordinary meaning, as counsel seem to infer. The question before the trial court, therefore, was whether or not the water, when filtered, was thereby rendered "clear and bright" and "suitable" for appellees' boilers. The circuit and Appellate Courts found it was not.

It is next contended that the trial court erred in refusing to allow appellant, on the hearing, to show any evidence that other filters of the same make, constructed by the same defendant, used for the purpose of filtering Chicago river water under substantially the same conditions obtaining in the plaintiffs' establishment, did their work to the satisfaction of the parties and without objection on their behalf. It is difficult to see how evidence of the operation of other filters could throw any light on the issue in this case, the question here being, did these filters perform the work which they were guaranteed to perform? The offer was to show "that the work of filtering was done to the satisfaction of the parties and without objection on their behalf." What was expected of the filters, under the guaranty in those cases, does not appear. Was the water furnished for use in boilers? That other parties were satisfied, or their failure to make objection, does not tend to prove that the water furnished to them was like that which appellant guaranteed to furnish appellees. The offer was not to show that another filter, constructed exactly like these, for the purpose of filtering water under identical conditions obtaining in appellees' establishment, so purified the water that it was made suitable for boilers. That all filters are not constructed alike is shown even by the evidence in this case. There are different kinds of water, requiring different filtration. It also appears that the river water at the factory of appellees "was the worst of any place in the city," being near the lake and near the outlet of two large sewers. The sole question in this case being, as before stated, whether the filters constructed for appellees fulfilled the requirements of the guaranty, we are satisfied the offered testimony was merely collateral, and had not such a bearing upon the issue as to justify its admission.

The cases cited by counsel for appellant are not, in principle, like the one here under consideration.

Other questions raised upon this appeal are not of sufficient importance to require notice, or do not appear to be preserved by way of propositions of law submitted to the trial court.

From a careful examination of the record, touching the questions properly raised here, we are satisfied the decision of the Appellate Court is right, and it will accordingly be affirmed.          *Judgment affirmed.*