Stanley D. Bishop, Plaintiff-Appellant, v. James L. Napier, Defendant-Appellee.

Gen. No. 64–73.

Second District.

August 31, 1965.

Powers McGuire and Carl J. Greenberg, of Chicago (Carl J. Greenberg, of counsel), for appellant.

Joslyn, Parker, Kell & Conerty, of Woodstock (V. E. Kell, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

The plaintiff, Stanley D. Bishop, brought this action under the Structural Work Act, ch 48, secs 60–69, Ill Rev Stats, against James L. Napier, defendant. At the close of the plaintiff's case in chief, the trial court granted defendant's motion for a directed verdict and, thereafter, denied the plaintiff's post trial motion. The plaintiff appealed to the Supreme Court of Illinois. On plaintiff's motion the cause was transferred to this court for decision and the alleged constitutional question was waived.

The question remaining for this court to determine is whether the facts of the case create a cause of action under the Structural Work Act. Three portions of the Act are pertinent. The preamble reads:

"An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges,

149

viaducts and other structures, and to provide for the enforcement thereof."

Section 60 provides in part as follows:

"That all . . . ladders . . . erected or constructed by any person . . . for the use in the erection, repairing, alteration, removal or painting of any house . . . shall be erected and constructed, in a safe, suitable and proper manner. . . ."

Section 69 then provides:

"For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured. . . ."

The evidence reveals that the defendant hired the plaintiff to remove storm windows from his house, wash the regular windows and then put up the window screens. In the process of accomplishing this, a regular work pattern evolved. The defendant would unlatch the storm windows from inside his home and push the bottom of the window outward. The plaintiff, who was outside, would then unhook the windows from the top and carry them to the ground. In order to reach the second floor a ladder was used. The particular ladder involved measured between 16–18 feet in length and was borrowed by the plaintiff from his own rented premises.

The plaintiff's injury occurred while he was removing one of the storm windows from the second floor. Plaintiff had placed the bottom of the ladder upon a wet and uneven flagstone type patio, with the top resting just below a second story windowsill. He then climbed the ladder and removed the storm window. No one was holding the ladder. The defendant was inside the house, ascending the stairs to the second

floor. At this particular moment, the bottom of the ladder slipped, causing the top of the ladder to slide rapidly down the side of the house. The plaintiff landed on the heels of his feet, thereby sustaining the injury complained of. The window was still in his hands when he landed on the ground. Neither the window nor the ladder was damaged.

There is no conflict in the evidence as to the fact that the plaintiff was an employee of the defendant; that the patio was wet because of a mist falling at the time of the accident; that the ladder, although not owned by either party, was seen and observed by the defendant before the accident; and that the ladder was in the same condition before the accident as it was afterwards.

The plaintiff contends, 1) that any work activity which requires the use of a ladder is inherently dangerous and therefore within the purview of the Structural Work Act, and 2) that replacing the storm windows with window screens was an "alteration" of defendant's home within the meaning of the Act.

 This is a case of first impression. In order to adopt either of the conclusions advanced by the plaintiff we would have to find that the Legislature intended such a result. The statute creates a cause of action which is additional to the remedies recognized at common law. Although the Act is remedial in nature, there are certain limitations which govern its interpretation. As was stated in Cedar Park Cemetery Ass'n, Inc. v. Cooper, 408 Ill 79, at page 83, 96 NE2d 482:

> "Some may say the act has its remedial aspects when examined from the standpoint of the evil attacked by the legislature. Even though that be so, it will not warrant construing the act liberally from the standpoint of exclusions and inclusions

of persons, for we cannot read into it something which is not within the clearly expressed intent of the legislature. (50 Am Jur, Statutes, sec 394.) Where a statute has remedial features and is at the same time in derogation of the common law, it will be strictly construed when determining what persons come within the statute. (50 Am Jur, Statutes, sec 405.)"

Applying these rules of construction, we must reject plaintiff's argument that the Act covers any work which requires use of a ladder. The Legislature has expressly limited the application of the Act to the use of ladders in connection with certain specified activities, namely, ". . . erection, repairing, alteration, removal or painting. . . ."

Plaintiff's second argument is that the removal of the storm windows and replacement thereof with window screens constitutes an "alteration" of the defendant's home. The Act contains no definition of "alteration," nor has this word been construed by any case decided under the Act. However, the term has been interpreted in other contexts, and there are two cases in particular which we find helpful. In Drew v. Mason, 81 Ill 498, the Supreme Court stated that the furnishing of materials and labor in placing a lightning rod on a house is not furnishing materials and labor "in building, altering, repairing or ornamenting" a house, in the sense those terms are used in the Mechanic's Lien Law.

The Supreme Court of Wisconsin in the case of Kresge v. Maryland Casualty Co., 154 Wis 627, 143 NW 668, interpreted the word "alteration" as used in an insurance policy. The particular provision stated that "additions to or alterations in, or construction of any building or structure, or elevator, are not covered under this policy." The facts in the case,

briefly stated, were that the assured was in the process of installing a vestibule at each of the entrances to its building, thereby affording protection to its employees in cold weather. It was conceded that the extra set of doors attached to the vestibules were intended for winter use and that only one set of doors would be in place during the summer months. A patron of the assured stumbled over a tool box left by the construction contractor's employee and was injured. The assured compromised the claim and sought reimbursement from the defendant insurance company. The trial court allowed recovery and the defendant appealed. On review the defendant claimed the policy excluded coverage because the erection of a vestibule is either an "addition" to or an "alteration" of the building, or else the "construction of a structure." In rejecting this theory the court said at page 669:

> "The operation was somewhat more elaborate than the usual putting in place of storm doors and windows, but was of the same general nature. We think it is quite plain that the vestibule did not constitute an addition to the building. The word 'addition' as there used should be held to mean enlargement or extension, so as to include additional space. Neither do we think that a temporary device put in place to keep out the wind and cold in the winter time should be held to constitute an alteration of the building itself within the meaning of the policy. There was no substantial change made in the structure, if indeed there was any change at all, and we think the word 'alteration' should be held to mean a substantial change. Bigelow v. Worcester, 169 Mass 390, 48 NE 1; Commonwealth v. Hayden, 211 Mass 296, 97 NE 783. It is also apparent that the putting in place of these doors was not the 'construction of

153

a structure.' In its usual and ordinary sense, the word 'structure' is applied to a building of some size, an edifice. Webster's Dict."

 We are of the opinion in the case at bar that the Legislature did not intend the word "alteration" as used in the Structural Work Act to apply to the particular work activity engaged in by the plaintiff at the time of his injury. Accordingly, the judgment of the trial court will be affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.