EUGENE DUFFIN, Plaintiff-Appellee, v. CLARK SEIBRING, Defendant-Appellant.

Fourth District No. 4—86—0526

Opinion filed April 30, 1987.

James P. Ginzkey, of Costigan & Wollrab, P.C., of Bloomington, for appellant.

Gerald P. Rodeen, of Dilks, Rodeen & Gibson, Ltd., of Paxton, for appellee.

JUSTICE LUND delivered the opinion of the court:

Following a fall from a grain bin owned by defendant Clark Seibring (Seibring), the plaintiff, Eugene Duffin (Duffin), filed suit against Seibring, requesting damages on the basis of a violation of the Structural Work Act (Act) (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69). The jury returned a verdict in Duffin's favor and the court entered judgment thereon. Seibring appeals the denial of his post-trial motion which requested judgment notwithstanding the jury's verdict or, in the alternative, a new trial.

Duffin filed his initial complaint, alleging negligence on the part of Seibring, on September 29, 1983. On June 11, 1985, Duffin filed an amended complaint which contained an additional count requesting damages on the basis of an alleged violation of the Structural Work Act. That count stated that on July 22, 1982, Seibring was the owner of a grain bin on a Ford County farm. On that date, Duffin was re-

quired to work on and about the grain bin spraying insecticide, fell from the roof of the bin, and was injured. Duffin alleged that in wilful violation of the Act, Seibring totally failed to provide "scaffolds, hoists, cranes, stays, ladders, or other mechanical contrivances" for use in spraying the bin.

On August 7, 1986, the circuit court denied Seibring's motion to dismiss the Structural Work Act count of Duffin's complaint. In so ruling, the court stated, "[s]praying insecticide around grain bins is as much a part of the maintenance of buildings in rural areas, as the washing of windows in cities."

At trial, Clark Seibring, whom Duffin called as an adverse witness, testified that on the morning of Duffin's accident, he directed Duffin to fumigate the grain bins located on the Seibring farm. As preventive maintenance, Seibring had the grain bins on the farm sprayed with corn weevil insecticide yearly.

There are approximately 30 grain bins on the Seibring farm. The bins are arranged in three rows, running in an east-west direction. On the morning in question, a crew consisting of Rich Seibring (Seibring's son), Vince McCabe, and Duffin began work on the first row of bins. The first bin on which Duffin began to work is made of corrugated steel and is 18 feet in diameter. The roof of the bin rises from its edge to a peak at about a 2-foot pitch. The edge of the bin's roof is about 18 or 20 feet above the ground. Spaced around the roof of the bin, which consists of approximately 24 sections divided by raised sections of metal, are four angle irons, or toeholds, which are approximately 19 inches to 2 feet from the center cap of the bin, which is located at the peak of its roof. Other grain bins on the Seibring farm have toeholds on every other roof section.

Duffin testified that he, McCabe and Rich Seibring all went to the top of a grain bin on the morning of July 21, 1982. The bin was empty and was sprayed with a hose running from a sprayer. McCabe and Rich Seibring had already descended to the ground on the ladder of the bin, and Duffin bolted on the hatch of the bin. After he had finished bolting the hatch, Duffin thought his right foot slipped. He did not know if he got something stuck on his foot. The next thing he knew, he was flat on his back and sliding down the bin's roof. He had no idea what caused him to fall from the bin. Duffin landed on the ground in front of the second bin in the row. He did not strike either that bin or the bin which he had sprayed on the way down.

On cross-examination, Duffin testified that he had worked for Seibring since 1970. The placement of the toeholds on the grain bin from which he fell had not changed during the years that he worked for

Seibring, and Duffin had been on the bin's roof on numerous prior occasions. He knew the positions of the toeholds, which are 13 inches wide. Although his fall occurred at approximately 8 a.m., there was no dew, moisture, or foreign substance on the roof of the grain bin. Nor were there any defects in the roof itself, such as damaged metal. When he fell, Duffin was wearing old cowboy boots with pointed toes and raised heels. Since McCabe was already on the ground, the spraying apparatus would have been out of the way when Duffin fell. Duffin did not know for a fact that he slipped on any of the fumigants.

Dr. Alain Menguey testified that as a result of his fall from the grain bin, Duffin sustained a fracture of the L-2 vertebrae. This condition is permanent in nature and can cause back pain for a lengthy period of time.

Vince McCabe stated that on the morning of Duffin's fall, he heard Duffin sliding off the grain bin, and saw Duffin land beside him. McCabe did not check the bin roof for spills until much later in the day. At that time he saw no indication that he had spilled any chemicals on the roof.

Testifying in his own behalf, Seibring stated that he purchased the group of grain bins which included the bin from which Duffin fell from the Federal government in 1959. When he purchased the bins, they were in the same spot as when Duffin's fall occurred. The only structural change which Seibring made in the bins after acquiring them was to elevate two of them for the apparent purpose of drying corn. Seibring has never removed any of the toeholds on the bins or changed the position of the toeholds.

At the conclusion of the trial, the jury rendered a verdict in favor of Duffin in the amount of $40,000, on which the circuit court subsequently entered judgment.

Seibring first contends that the circuit court erred in denying his motion to dismiss Duffin's complaint, because Duffin did not state a cause of action for a violation of the Structural Work Act. In support of this contention, Seibring notes that the Act pertains to only *structural* work and asserts there is no evidence that the spraying of insecticide preserved or helped to maintain the grain bins. Seibring contends that, instead, this activity is comparable to changing storm windows or trimming trees, activities which are not within the scope of the Structural Work Act.

Duffin contends that the work which he was performing when injured is within the scope of the Structural Work Act, since under the liberal construction which should be accorded the Act, its coverage extends to any work upon a structure, and a grain bin is a structure

within the meaning of the Act. He analogizes the spraying of a grain bin to activities which help to maintain a structure within the meaning of the Act, such as window washing. He suggests it would be absurd to hold that he could recover under the Act for damages sustained in a fall while painting a grain bin, but that he could not recover under the Act for injuries sustained in a fall from the same position while spraying the bin.

In his reply argument, Seibring maintains that Duffin's complaint does not state a cause of action for a violation of the Structural Work Act because it does not allege that Duffin was engaged in or passing by a structural activity when injured, that the spraying was being performed with reference to a structure, or that a defect existed in the construction of the grain bin. Seibring also attempts to analogize this case to those negligence cases where a defect in a structure is readily apparent to the plaintiff.

 Section 1 of the Structural Work Act (Act) provides:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1981, ch. 48, par. 60.)

Section 9 of the Act provides that a cause of action accrues to any person injured as a result of a wilful violation of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 69.) The Act is to be accorded a liberal construction. (*Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54.) Failure to provide any of the items specified in the Act where such are necessary for a worker's protection constitutes a violation of the Act to the same extent as if defective devices had been provided. (See *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, *cert. denied* (1968), 393 U.S. 953, 21 L. Ed. 2d 271, 89 S. Ct. 296.) A grain bin is a "structure" within the meaning of the Act. *Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54.

One of the original purposes of the Structural Work Act, which was originally enacted in 1907, was to promote increased safety in construction work. (Comment, *The Illinois Structural Work Act,* 1975

U. Ill. L.F. 393.) Recent decisions have, however, extended the coverage of the Act to activities which fall more within the realm of maintenance of structures as opposed to construction work. For instance, in *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 302 N.E.2d 64, the court held that the washing of the windows of a commercial office building is an activity within the scope of the Act, since window washing is qualitatively comparable to repairing or painting a structure. Furthermore, in *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946, the court held that a flooded power plant ash pit, into which a worker descended on a ladder in order to repair a sump pump, was a structure within the meaning of the Act, and that for purposes of the Act, the ladder was a scaffold. In *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 156, 481 N.E.2d 709, 711-12, the supreme court stated:

> "The [*Simmons*] court rejected defendant's contention that the plaintiff had not been repairing a 'structure' when he sustained his injuries. The court observed that repair of the sump pump was necessary in order to relieve flooding in the ash pit. It concluded that repair of the pump was equivalent to repair of the pit itself."

■ In view of the above cases, we conclude that the circuit court did not err in holding that Duffin's spraying of insecticide into Seibring's grain bin was an activity within the scope of the Structural Work Act. Like the washing of windows or the repair of a sump pump in order to remove water from a power plant ash pit, the spraying of insecticide into a grain bin does not affect the structural integrity of the bin. It does, however, maintain the bin's usefulness for its intended purpose, for absent the spraying of insecticide to control corn weevils, a grain bin would be utterly useless for the purpose of storing grain.

In support of his contention that at the time of his fall, Duffin was not engaged in an activity within the scope of the Act, Seibring relies on *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 440 N.E.2d 625, *Fisher v. Crippen* (1986), 144 Ill. App. 3d 239, 493 N.E.2d 1204, *Gill v. Parcable, Inc.* (1985), 138 Ill. App. 3d 409, 485 N.E.2d 145, *Grant v. Zale Construction Co.* (1982), 109 Ill. App. 3d 545, 440 N.E.2d 1043, *Wright v. Synergistics, Inc.* (1977), 52 Ill. App. 3d 233, 367 N.E.2d 466, and *Bitner v. Lester B. Knight & Associates, Inc.* (1974), 16 Ill. App. 3d 857, 307 N.E.2d 136. All of these cases save *Fisher* are distinguishable from the present case in that the plaintiff was not engaged in the repair or maintenance of an existing structure when injured. *Fisher* likewise is not apposite in that there

the defendant was not in charge of the work and the plaintiff was not injured as a result of a defect in a support or scaffold-like device.

Also cited in support of Seibring's position as to this issue is the Second District's decision in *Bishop v. Napier* (1965), 62 Ill. App. 2d 148, 210 N.E.2d 9. There, the plaintiff was injured when a ladder slipped while he was taking down storm windows, washing the inside windows, and installing screens in place of the storm windows at a private residence. The court held that this activity was not within the scope of the Act. Arguably, this activity maintained the residence in a useful condition to the same extent as does spraying a grain bin with insecticide. The *Bishop* decision is not, however, binding on us, and its continuing precedential value has been diminished by decisions such as *Halberstadt* and *Simmons*.

■ We also disagree with Seibring's contention that Duffin did not properly allege that a defect existed in the construction of the grain bin from which he fell. The Structural Work Act count of Duffin's complaint states in part:

> "On July 22, 1982, defendant wilfully violated the Structural Work Act by reason of defendant's total failure to provide scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances for use in spraying the bin so that plaintiff had proper and adequate protection for life and limb as required by statute."

In view of the principle that failure to provide the items specified in the Act is equivalent to providing defective devices (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724), Duffin's complaint adequately alleges a defect in the grain bin from which he fell, namely that the bin lacked the items required by the Structural Work Act.

Seibring's argument that Duffin's failure to appreciate the danger inherent in the bin from which he fell precludes Duffin from recovering on the basis of his Structural Work Act count is equally unconvincing. In support of this argument, Seibring cites *Fisher* and *Hamilton v. Faulkner* (1967), 80 Ill. App. 2d 159, 224 N.E.2d 304. We have already stated our reasons for concluding that *Fisher* is factually distinguishable from the case at bar. *Hamilton* is also distinguishable, for there the question was whether the plaintiff adduced sufficient proof of the existence of a latent defect in a rented premises to withstand a motion for a directed verdict in defendant's favor. The court held that he did not, since the defective condition was as readily known or apparent to the plaintiff as it was to the defendant. *Hamilton* did not involve a claim for damages under the Structural Work Act.

■ The doctrines of contributory negligence and comparative fault have never been applicable to Structural Work Act actions. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4.) Therefore, whether Duffin knew of or should have appreciated the danger inherent in working on a grain bin lacking the items required by the Structural Work Act is of no consequence with respect to his right to recover damages under the Act.

Seibring next argues that the circuit court erred in giving plaintiff's instructions Nos. 16, 17, 19, and 20 to the jury. Plaintiff's instruction No. 16 stated:

> "The plaintiff has the burden of proving each of the following propositions:
>
> First, that the defendant was the person having charge of the spraying of the structure in question."

Plaintiff's instruction No. 17 stated:

> "The plaintiff claims that the defendant was the person having charge of spraying insecticide on the structure in question."

Plaintiff's instruction No. 19 stated:

> "Under the Structural Work Act, the maintenance of a structure is considered to be the same as the repair of a structure and comes within the scope of the Act."

Plaintiff's instruction No. 20 stated:

> "The spraying of insecticide around grain bins is a part of the maintenance of the bin."

In lieu of plaintiff's instruction No. 16, Seibring contends that the circuit court should have instructed the jury, in accordance with the Illinois Pattern Jury Instructions, that it was Duffin's burden to prove that Seibring was the person "having charge of the erection, construction, repairing, alteration, removal or painting of the structure in question." (See Illinois Pattern Jury Instruction, Civil, No. 180.09 (2d ed. 1971) (IPI Civil 2d).) Instead of plaintiff's instruction No. 17, Seibring asserts that the trial court should have instructed the jury that Duffin claimed Seibring was "the person having charge of the erection, construction, repairing, alteration, removal, or painting of the structure in question." (See IPI Civil 2d No. 180.04.) Seibring's objection to plaintiff's instructions Nos. 19 and 20 is that they improperly inform the jury that as a matter of law, the spraying of the bins was within the purview of the Structural Work Act.

■ Where there is no dispute as to the facts on which a claim for damages under the Structural Work Act is premised, whether the facts afford the plaintiff a cause of action under the Act is a question for the trial court to decide as a matter of law. (See *Smyrniotis v.*

*Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 491 N.E.2d 1246.) In the present case, it is undisputed that Duffin was spraying grain bins with insecticide at the time of his fall. Thus, it was the circuit court's prerogative to determine as a matter of law whether this activity was within the purview of the Structural Work Act.

▪▪ As Seibring points out, a jury should generally be given applicable IPI instructions. This rule is, however, subject to several qualifications. Among these is the requirement that a trial court faced with a unique factual situation or point of law not addressed by the pattern instructions should provide the jury with modified versions of the pattern instructions which accurately state the law. (*Dezort v. Village of Hinsdale* (1979), 77 Ill. App. 3d 775, 396 N.E.2d 855.) A literal reading of the words "erection, construction, repairing, alteration or painting" could possibly cause a jury to believe that the activities which courts have held are covered by the Structural Work Act, such as washing office building windows (*Halberstadt*), are not within the scope of the Act. Since on the basis of a literal reading of Seibring's proposed substitutes for Duffin's instructions Nos. 16 and 17, the jury erroneously may have concluded that the spraying of grain bins with insecticide is not covered by the Structural Work Act and rendered a verdict in favor of Seibring on the basis of that belief, the circuit court properly refused to give the jury these instructions and gave Duffin's instructions Nos. 16 and 17 in their stead. Because they addressed matters of law not covered by other instructions, the circuit court also did not err in giving Duffin's instructions Nos. 19 and 20 to the jury.

Seibring next contends that Duffin's failure to introduce expert testimony regarding a farmer's duty to provide scaffolds or other mechanical contrivances to farm workers spraying grain bins, or evidence of pertinent governmental or industry safety regulations regarding this activity, precludes Duffin from recovering damages on the basis of Seibring's alleged violation of the Structural Work Act. Seibring maintains that in the absence of such evidence, the jury had to speculate on the question of the existence of a duty of care owed by him to Duffin, as evidenced by a written question from the jury during its deliberations, "Could Seibring be found liable for the fall but *not* in violation of the Structural Work Act?" Seibring asserts that in a case such as this, governmental safety standards, although not dispositive, are the best evidence of the appropriate standard of care, and maintains that in any event, a standard of care cannot be established by a mere showing that other grain bin roofs were designed and constructed differently.

Duffin contends the evidence that Seibring owned the grain bin, that he was in charge of the spraying activity, and that the toeholds located around its roof were inadequate protection against falls in itself was sufficient to establish a duty on the part of Seibring to provide safety devices pursuant to the Structural Work Act. Duffin contends that there are no official standards or experts regarding the construction of grain bins, and that he sufficiently established that Seibring had a duty to provide adequate safety devices on the grain bin from which he fell by introducing evidence of the condition of other grain bins on the Seibring farm.

■■ Whether adequate safety devices are provided in conformity with section 1 of the Act is a question for the trier of fact. (*Banwart v. Okesson* (1980), 83 Ill. App. 3d 222, 403 N.E.2d 1234.) None of the cases cited by Seibring support his contention that expert testimony, industry standards, or government regulations pertaining to the use of safety devices on grain bins were necessary in order to establish a duty of care on his part, and our own research has revealed no authorities supporting this contention. Rather, expert testimony is required only in instances where a layman cannot readily discern the appropriate standard of care, such as most medical malpractice cases. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence sec. 702.4, at 463 (4th ed. 1984).) Whether grain bins having a greater number of toeholds provide workers with a greater degree of safety than bins having a lesser number of toeholds is not a matter beyond the comprehension of the average layman. Therefore, the evidence that other grain bins on the Seibring farm had a greater number of toeholds than the bin from which Duffin fell and that Seibring knew of this fact provided an adequate basis for the jury's implicit finding that Seibring wilfully violated the Structural Work Act by providing inadequate support devices on the grain bin from which Duffin fell.

In a closely related argument, Seibring asserts that the evidence that other grain bins on his farm contained more toeholds than the bin from which Duffin fell was improperly admitted, because it was irrelevant to the question of whether the bin from which Duffin fell was in violation of the Structural Work Act. In support of this argument, Seibring states that to argue that other bins containing a greater number of safety devices imparted to him knowledge that the bin from which Duffin fell was in violation of the Act is to assume that the bin from which Duffin fell was defective. Also in connection with this argument, Seibring notes that he neither designed nor constructed the bin from which Duffin fell.

Duffin contends that evidence of the condition of the other bins was relevant to the question of whether Seibring provided adequate safety devices on the bin from which he fell. Duffin also argues that the condition of the other bins was relevant to proving that Seibring wilfully violated the Structural Work Act in the sense that he had knowledge that the bin from which Duffin fell contained inadequate safety devices.

In his reply brief, Seibring contends that the condition of other grain bins on his farm was irrelevant because Duffin could just as easily have fallen from a bin containing eight or more toeholds. He also asserts that his knowledge that other grain bin roofs were constructed in a different manner was not knowledge that the bin from which Duffin fell was unsafe.

■■ ■ Evidence is relevant if it tends to prove a fact in controversy or renders a matter in issue more or less probable. (*Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.) Generally, evidence requiring a comparison of similar objects "is admissible to show defects, unfitness, inferiority, or failure to comply with a warranty of an article, machine or apparatus, where the similarity of the things compared is sufficient to give it probative value, and other circumstances as to place, use, and care are not so materially different as to raise troublesome collateral issues." *Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 596, 612, 342 N.E.2d 79, 91.

In *Nitrin* the issue was whether the plaintiff was entitled to damages on the basis of the defective manufacture of a large pressure vessel, known as a converter. The court held that evidence that a converter, which was similar to the first converter in all respects except it did not have either of the alleged defects present in that converter, operated without failure 2½ times longer than the first converter, was properly admitted in order to support the plaintiff's contention that the two defects in the first converter caused its failure. Furthermore, in *Luetgert v. Volker* (1894), 153 Ill. 385, 39 N.E. 113, the court held that the condition of sausages of the same lot which were manufactured at the same time as the allegedly spoiled sausages in issue was relevant for the purpose of establishing that the sausages in issue were not spoiled when they were sold. In the cases in which evidence of the condition of purportedly similar objects has been held inadmissible (*O. H. Jewell Filter Co. v. Kirk* (1902), 200 Ill. 382, 65 N.E. 698; *Lathrop-Paulson Co. v. Perksen* (1923), 229 Ill. App. 400), there were significant differences between the object in issue and the object with which that object was sought to be compared.

■■ In the present case, photographs which were admitted into

evidence illustrate that the grain bins having a greater number of toeholds are otherwise substantially the same as the bin from which Duffin fell, except that the former bins have a flat center cap as opposed to the pointed center cap on the roof of the bin from which Duffin fell. We do not deem the difference in the surface of the center caps so significant as to render the photographs of the bins having a greater number of toeholds of no probative value with regard to whether Seibring violated the Structural Work Act by failing to provide adequate support devices on the bin from which Duffin fell. The photographs of the bins having a greater number of toeholds constituted a *prima facie* showing that those bins were substantially similar to the bin from which Duffin fell, and shifted to Seibring the burden of establishing that they were not substantially similar to the bin from which Duffin fell. This Seibring did not do.

We are not persuaded by Seibring's contention that relying on evidence of the existence of bins with a greater number of toeholds to establish that the bin from which Duffin fell was dangerous is to assume that the latter bin was defective. Evidence of the condition of the bins with more toeholds did not require the jury to conclude that the bin from which Duffin fell was defective. The jury could reasonably have concluded that despite the condition of the other bins, the bin from which Duffin fell was not defective, but chose not to do so.

The circuit court did not err in admitting evidence that other grain bins on the Seibring farm had more toeholds than the one from which Duffin fell.

Seibring's final contention is that the circuit court improperly refused to submit to the jury the following special interrogatories:

> "Do you find from a preponderance of the evidence that Plaintiff was erecting, repairing, altering, removing, or painting the bin?"

> "Do you find from a preponderance of the evidence that Defendant was in charge of the work?"

In support of his argument that the circuit court should have propounded to the jury the second proposed special interrogatory, Seibring notes that he did not withhold income or social security taxes from Duffin's pay, and did not provide Duffin with unemployment coverage. Seibring also refers to testimony that he was not on the premises when Duffin fell, and that he did not designate which members of the spraying crew were to spray the bin and which were to stay on the ground.

Duffin contends that the proposed special interrogatory pertaining

to whether he was engaged in a covered activity when he fell was properly refused, because it concerned a question of law and would have been unduly confusing and misleading in view of the other instructions. Duffin asserts that the proposed special interrogatory concerning who had charge of the spraying of the bins was properly refused because the jury would necessarily have had to find in his favor as to that issue and because Seibring failed to tender an instruction on how the jury should deal with a special interrogatory. Also, Duffin contends this proposed interrogatory could have misled the jury into believing that if any one of the three persons who were working on the grain bins on the morning he was injured had responsibility for determining who would perform what facet of the work, Seibring did not have charge of the work within the meaning of the Structural Work Act.

Section 2—1108 of the Code of Civil Procedure provides in pertinent part:

> "Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be requested by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1108.)

The purpose of special interrogatories is to test the jury's general verdict against its conclusions as to the ultimate controlling facts. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) Proposed special interrogatories which are ambiguous in form need not be submitted to the jury. (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63; *Golden v. Big Bear Foods, Inc.* (1968), 102 Ill. App. 2d 237, 243 N.E.2d 730.) Also, special interrogatories should use the same language or terms as are contained in the other instructions and should not have a tendency to confuse or mislead the jury. *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542; *Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 370 N.E.2d 1131.

 As previously discussed, the jury was properly instructed that the maintenance of a structure is the same as repair of a structure for purposes of the Structural Work Act, and that the spraying of insecticide around grain bins is a part of the maintenance of the bins. Moreover, Seibring did not dispute that Duffin's fall occurred while he was spraying grain bins located on the Seibring farm with insecticide. Thus, the first proposed special interrogatory in effect asked the jury to determine the truth of a proposition which other in-

structions, coupled with uncontradicted evidence, required the jury to accept as true. It follows that the circuit court properly refused to submit the first proposed special interrogatory because of the confusion which it may have caused the jury in its deliberations.

■■ With respect to the second proposed special interrogatory, Illinois courts have adopted an expansive approach to the question of whether one "has charge of" a work site for purposes of the Structural Work Act. Thus, persons who have no direct contact with a worker's injuries may nevertheless be held liable for the worker's injuries if they have general supervisory power over the work area where the injuries occurred. *Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 498 N.E.2d 522; *Przybylski v. Perkins & Will Architects, Inc.* (1981), 95 Ill. App. 3d 620, 420 N.E.2d 524.

It is undisputed that Duffin was Seibring's employee and was performing work on Seibring's farm at Seibring's direction when he fell from the grain bin. Therefore, the only reasonable conclusion for the jury on the basis of the evidence presented was that Seibring had general supervisory power with respect to the work which Duffin was performing when injured and thus was in charge of that work. It follows that the only reasonable answer to Seibring's second proposed special interrogatory was "yes." Since this answer does not contradict the jury's general verdict, any error which the circuit court committed in refusing to submit this proposed special interrogatory to the jury did not prejudice Seibring to such an extent that the jury's verdict must be set aside.

Finding no merit in any of Seibring's contentions, we affirm the circuit court's denial of his post-trial motion.

Affirmed.

SPITZ, P.J., and McCULLOUGH, J., concur.