RICHARD L. BECKER, Plaintiff-Appellant, v. UNIMIN CORPORATION, Defendant-Appellee.

Third District   No. 3—90—0388

Opinion filed March 28, 1991.

Anthony C. Raccuglia & Associates, of Peru (Cynthia Raccuglia, of counsel), for appellant.

William J. Wylie & Associates, of Wheaton (Stephen A. Rehfeldt, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:

Plaintiff Richard Becker filed a two-count complaint against defendant Unimin Corporation alleging violation of the Structural Work Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) and negligence. The circuit court granted defendant's motion for judgment on the pleadings (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(e)) as to the Structural Work Act count finding, as a matter of law, that the activity in question was not covered by the Act. The issue before us is whether the act of filling a fuel storage tank with fuel oil is an activity protected by the Structural Work Act.

Plaintiff, an employee of Gramann Service Company, alleged that he was injured while delivering a load of fuel oil to Unimin Corporation at Utica, Illinois. In order for the plaintiff to transfer the fuel oil from his transport truck to a large fuel storage tank which was lo-

cated on the defendant's premises, it was necessary for him to climb and stand upon a ladder which was provided by the defendant.

He alleged that the ladder which defendant provided was not constructed in a safe, suitable and proper manner, that it had no safety railing, no place for a secure hand hold, and that it was of an inadequate height and width for safe standing against the fuel storage tank. Defendant is further alleged to have failed to provide a safe, suitable, steady and proper scaffold to the plaintiff. While plaintiff was utilizing the ladder to connect a hose between the truck and the tank, the ladder moved, collapsed or gave way. Plaintiff fell from the ladder and thereby suffered injuries. He alleges his activity was "work constructing and erecting, repairing or otherwise altering and/or maintaining the *** structure" and that he should be afforded protection of the Structural Work Act.

■■ Section 1 of the Structural Work Act in part states:

"All scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances, erected or constructed *** for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give *** adequate protection to the life and limb of any person or persons employed or engaged thereon ***." (Ill. Rev. Stat. 1989, ch. 48, par. 60.)

The Structural Work Act protects activities of a particularly hazardous nature and is designed to lessen the extent of the danger. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127, 302 N.E.2d 64.) In *Halberstadt* the Illinois Supreme Court adopted a construction of the Act to bring the occupation of commercial window washer within its protection. The court recognized that the function of washing windows on a commercial building in a large city was as much a part of the maintenance of those buildings as repairing or painting the structure and that the window washing activity was of a hazardous nature. Plaintiff herein argues that his activity in filling the tank was hazardous, that he had to climb the ladder to accomplish his task and that his act of filling the tank was maintenance of a structure. Because recent judicial opinions have extended coverage to certain types of maintenance activities, he urges that the Act protects his activity.

■■ Plaintiff argues and the trial court properly found that the case of *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946, supports the proposition that the fuel tank in this case

was a "structure" within the meaning of the Structural Work Act. We agree. In *Simmons* the plaintiff was afforded protection of the Act when he slipped and fell as he descended on a permanently affixed ladder into an ash pit which housed the sump pump he had been instructed to repair. The ash pit was determined to be a "structure" and the ladder a "scaffold." Repair of the sump pump was equivalent to repair of the pit itself and the Act properly afforded protection. The large fuel storage tank herein similarly is a structure and the ladder is a scaffold.

■ In like fashion a grain bin has been held to be a "structure" within the meaning of the Act. (*Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54; *Duffin v. Seibring* (1987), 154 Ill. App. 3d 821, 507 N.E.2d 930.) The plaintiff in *Duffin* was required to work on one of defendant's grain bins by spraying corn weevil insecticide on the inside of the bin from a position atop the structure. Such fumigation of the bins was done on an annual basis. The plaintiff slipped while on the roof and fell to the ground below. The appellate court concluded

> "[t]hat the circuit court did not err in holding that Duffin's spraying of insecticide into Seibring's grain bin was an activity within the scope of the Structural Work Act. Like the washing of windows or the repair of a sump pump in order to remove water from a power plant ash pit, the spraying of insecticide into a grain bin does not affect the structural integrity of the bin. It does, however, maintain the bin's usefulness for its intended purpose, for absent the spraying of insecticide to control corn weevils, a grain bin would be utterly useless for the purpose of storing grain." (*Duffin*, 154 Ill. App. 3d at 828, 507 N.E.2d at 934.)

It is argued that the facts in this case are analogous to *Duffin* and that the plaintiff's activity herein involved "maintenance" of the fuel storage tank. We do not agree. In *Duffin* the plaintiff was preparing the structure for its intended use of grain storage by spraying insecticide. The plaintiff in *Duffin* was not filling the bin with grain. The plaintiff in the case before us was filing the storage tank with fuel oil. He was not engaged in any act of preparing the storage tank but was in fact using the tank for its intended purpose. He was not erecting the structure. He was not repairing or altering the structure. He was not removing or painting the structure.

He urges, however, that the activity he was engaged in should be construed as "maintenance" or other activity covered by the Act. Fuel storage tanks are designed to store fuel. Their intended and actual use is to serve as repositories for large quantities of fuel. The act

of filling such a tank is usage of the tank for its intended purpose. Filling the tank does nothing to enhance the tank's usefulness or to preserve its usefulness.

We find that plaintiff's activity herein was not "maintenance" within the meaning of the above cases but was usage of the structure for its intended purpose. The act of filling a fuel storage tank with fuel is not an activity of a hazardous nature protected under the Structural Work Act.

The decision of the circuit court of La Salle County is affirmed.

Affirmed.

BARRY and GORMAN, JJ., concur.