GILBERT FARI *et al.*, Plaintiffs-Appellants, v. McCORMICK CENTER HOTEL, INC., Defendant-Appellee.

First District (5th Division)   No. 1—94—0922

Opinion filed October 27, 1995.

Stinespring, Lambert & Associates, of Chicago (Harry P. Stinespring III and John W. Pleta, of counsel), for appellants.

Querrey & Harrow, Ltd., of Chicago (Paul J. Sarauskas and Michael Resis, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The plaintiffs, Gilbert Fari and Nicole Fari, filed a complaint against the defendant, McCormick Center Hotel, Inc., alleging that the defendant violated the Structural Work Act (the Act) (740 ILCS 150/1, 9 (West 1992)). Mr. Fari (Fari) sought recovery for an injured shoulder, and Mrs. Fari pleaded loss of consortium. Fari was working in defendant's hotel when he came across a batch of video cables piled up in an electric closet where he often worked. Fari wanted to remove the cables in order to reach the closet's control panels more easily, and he fell off a ladder while attempting to hang the cables on a drainpipe in the closet. Defendant moved for summary judgment, arguing that Fari's activity did not fall within the protection of the Act. The trial court granted the motion, from which the plaintiffs appeal.

We affirm.

BACKGROUND

Fari was an electrician working for Lar-Vi Electric, an electrical contractor retained by the defendant. On April 18, 1990, Fari was working in defendant's hotel when he went to an electric closet containing control panels which Fari often used in his work. Video cables were partially blocking the door to the closet, and Fari decided to hang the cables on a drainpipe in the closet. Fari fell when the base of the ladder slipped, and he suffered a shoulder injury.

Fari filed his complaint on August 23, 1991, and the plaintiffs filed their amended complaint on February 28, 1992. The amended complaint contained two counts: count I sought recovery for Fari on alleged violations of the Act, and count II sought recovery for Mrs. Fari from the same violations, based on loss of consortium. Section 1 of the Act states:

"All *** ladders *** for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable, and proper manner." (740 ILCS 150/1 (West 1992).)

Section 9 of the Act states:

"For any injury to person or property, occasioned by any wilful violations of this Act *** a right of action shall accrue to the party injured, for any direct damages sustained thereby ***." 740 ILCS 150/9 (West 1992).

On October 22, 1993, the defendant moved for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure. (735 ILCS 5/2—1005.) The defendant argued that Fari was not engaged in an activity covered by the Act, and the defendant presented Fari's deposition testimony to support its motion.

Fari's deposition testimony contained the following facts. On April 18, 1990, Fari went to an electrical closet which contained circuit breakers and control panels for lighting and sound. No construction work was being done in the closet area, but Fari went to the closet almost everyday to use its circuit breakers and control panels. On the floor of the closet were two or three AT&T video cables which AT&T had used and left behind. The cables were between 100 and 150 feet long and were piled on the closet floor. The cables were cut on one end and attached to a telephone shaft on the other end. When AT&T had previously installed the cables, Fari had drilled holes for the cables and showed AT&T how to run them overhead.

The cables were piled on the back of the hallway door to the closet, so that Fari could not open the door completely. Fari wanted to save the cables because AT&T was going to install and use them for another function. Fari decided to hang the cables on a drainpipe located at the top of the closet. Fari stated, "I wanted to hang them up because they were in my way to do my work in that closet, which is a dimmers closet that controls all the lights for the ballroom and all the meeting rooms."

Fari went into the closet and rolled the cables together. He placed a stepladder to lean against a wall and climbed the ladder to hang the cables on the drainpipe. Fari's feet were about six feet above the floor while he was hanging the cable, and Fari fell when the ladder slipped at its base. Fari landed on his right shoulder and suffered a tear in his rotator cuff.

On February 4, 1994, the trial court filed a memorandum opinion which granted the motion for summary judgment on both counts. The trial court stated that Fari was not engaged in any activity which would qualify as a structural activity under the Act because Fari's activity was not an integral part of the erection, repairing, removal and/or painting of any structure as defined in the Act itself. The court entered the order granting summary judgment on March 11, 1994, from which the plaintiffs appealed on March 16, 1994.

OPINION

In summary judgment cases, we conduct a *de novo* review of the evidence in the record. (*Espinoza v. Elgin, Joliet & Eastern Ry. Co.* (1995), 165 Ill. 2d 107, 113, 649 N.E.2d 1323.) The court must

construe all evidence strictly against the movant and liberally in favor of the nonmoving party. (*Espinoza*, 165 Ill. 2d at 113.) Summary judgment is appropriate when there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt. (*Espinoza*, 165 Ill. 2d at 113.) Although summary judgment is encouraged to aid the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. (*Espinoza*, 165 Ill. 2d at 113.) Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied. *Espinoza*, 165 Ill. 2d at 114.

¶2 To sustain a cause of action for violation of the Act, a plaintiff must establish the following elements: (1) he was involved in structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical device was being used; (4) a defect existed in the construction or use of the device; (5) the defect proximately caused his injuries; (6) the defendant had charge of the work; and (7) the defendant wilfully violated the Act's safety standards. (*Cockrum v. Kajima International, Inc.* (1994), 163 Ill. 2d 485, 491, 645 N.E.2d 917.) A plaintiff's inability to produce evidence of one or more of the above elements is sufficient grounds for summary judgment. (*Ferrer v. Sugar Magnolia, Inc.* (1994), 263 Ill. App. 3d 186, 190, 635 N.E.2d 1039.) While the Act is to be liberally construed to protect workers engaged in dangerous or extrahazardous occupations, it is not intended to cover any and all construction activities or all injuries at or near a construction site. *Glazier v. American National Bank & Trust Co.* (1995), 271 Ill. App. 3d 1098, 1101, 649 N.E.2d 448.

■ We conclude that summary judgment was properly granted because the plaintiffs did not produce any evidence of the first requirement, that Fari was involved in a structural activity. The Act covers the "erection, repairing, alteration, removal or painting" of structures. (740 ILCS 150/1 (West 1992).) In the instant case, Fari merely moved some cables out of his way so that he could better reach and operate the closet's control panels. Fari did nothing to alter, repair, or erect any structures. Only those who actually participate in construction activity are covered by the Act's provisions (*Ferrer*, 263 Ill. App. 3d at 191), and no such structural activity was presented by the plaintiffs' evidence.

The plaintiffs contend that although moving the cables may not have been a structural activity in itself, the removal was a necessary first step for Fari to perform a structural activity. We agree with the legal principle on which the plaintiffs rely. This court has stated,

"The Act applies if, at the time of an injury, the worker was engaged in a hazardous task that was essential to the worker's 'structural' work activities, even though he was not directly engaged in a structural work activity at the time of the injury." (*Block v. Lohan Associates, Inc.* (1993), 269 Ill. App. 3d 745, 760, 645 N.E.2d 207.) Several cases have allowed the Act to cover activities which were a necessary first step to structural work activities. See *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 452-53, 473 N.E.2d 946 (repair of the sump pump necessary to relieve flooding in the ash pit, so that repair of the pump was equivalent to repair of the pit itself); *Gall v. Metropolitan Sanitary District* (1982), 109 Ill. App. 3d 502, 507, 440 N.E.2d 973 (cleaning sewage tanks covered because necessary first step in the plan of repairing the tanks).

However, the plaintiffs did not produce any evidence that this principle applied to this case, as there was no evidence that the removal of the cables was necessary to perform a structural activity. Plaintiffs argue that Fari's activity was a necessary first step to enable Fari "to begin the work of repairing and maintaining the cable/electrical panels in the work area and later altering the building's structure by drilling holes in the ceiling and permanently installing the cable." Nonetheless, the deposition contains no evidence to support either part of this statement. Addressing the first contention of "maintaining the cable/electrical panels," the plaintiffs admit that Fari moved the cables to "gain full access to the room where the electrical/cable system controls were based." We do not agree with the plaintiffs that operating a control panel may constitute "maintenance." Maintenance activities are "acts to prevent a decline, lapse, or cessation from existing state or condition." (Black's Law Dictionary 953 (6th ed. 1990).) As such, the function of maintenance is qualitatively comparable to repairing a structure and thus maintenance is covered under the Act. (See *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 128, 302 N.E.2d 64 (window washing was maintenance covered under the Act because qualitatively comparable to repairing or painting a building).) The operation of a control panel is not maintenance as defined above. Moreover, when a person uses an item for its intended purpose, the person is not performing "maintenance" on the item nor engaging in any activity covered under the Act. (*Becker v. Unimin Corp.* (1991), 212 Ill. App. 3d 35, 37-38, 570 N.E.2d 789 (filling storage tank not maintenance, as maintenance must enhance or preserve usefulness).) Therefore, under both the dictionary definition and the reasoning in *Becker*, operating a control panel is not maintenance and is not an activity covered by the Act.

The record also fails to support plaintiffs' second claim, that Fari moved the cables so that he could later drill holes in the ceiling and permanently install the cable. In his deposition, Fari made only one statement on the cables' future use—"I went to save them because they were going to be used for another function, so they [AT&T] were to install them." Fari never claimed that he would have any future involvement with the cables or their installation. Because Fari had no plans to maintain, erect, or repair anything in the closet, the plaintiffs' reliance on cases involving "necessary first steps" is misplaced and cannot support their contention that the trial court erred.

The plaintiffs make two attempts to escape the fact that Fari was not involved or going to be involved in the maintenance or repair of the closet. First, they assert that Fari's other tasks included responsibility for the repair and maintenance of electrical equipment in the building. Second, they argue that Fari "*had* altered the structure of the building itself by drilling holes in the ceiling to run overhead cables." (Emphasis added.) However, inquiry into coverage under the Act focuses on the particular circumstances surrounding the occurrence of the injury. (*Glazier*, 271 Ill. App. 3d at 1101.) Past activities totally separate from the one which caused Fari's injury are irrelevant when determining the Act's coverage. (See *Bitner v. Lester B. Knight & Associates, Inc.* (1974), 16 Ill. App. 3d 857, 307 N.E.2d 136 (electrician in maintenance department not covered under Act when merely labeling buckets at the time of injury).) The plaintiffs have not cited any cases to contradict *Bitner* or support their contention.

In their reply brief, plaintiffs attempt to portray Fari's act of moving the cables as a "structural activity" in and of itself. However, while plaintiffs argue that "either adding or subtracting cables" should be considered a structural activity, we need not consider that issue here. Assuming *arguendo* that the video cables did form a structure, Fari was not adding or subtracting any cables but merely moving them aside, and he did not alter the structure of the cable system in any way.

Lastly, plaintiffs claim that summary judgment was inappropriate because of the presence of "a genuine different interpretation of material facts." This argument is meritless. In the context of the Act, summary judgment is appropriate where the material facts are not in dispute and the controversy is over the proper construction of the Act and whether the facts sustain a cause of action. (*Glazier*, 271 Ill. App. 3d at 1102.) In this matter, the plaintiffs did not dispute the only material facts—Fari moved the cables out of his way so that he

could reach the control panels to operate them. Because plaintiffs have not disputed these facts, but only whether the Act covers the factual circumstance which resulted in the injury, we find that summary judgment was an appropriate disposition in this case.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNULTY and T. O'BRIEN, JJ., concur.