(No. 76978.

RAYMOND J. ESPINOZA, JR., *et al.*, Appellees, v. ELGIN, JOLIET AND EASTERN RAILWAY COMPANY *et al.* (Elgin, Joliet and Eastern Railway Company, Appellant).

*Opinion filed March 30, 1995.*

Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago (George W. Gessler and William P. Jones, of counsel), for appellant.

Terrance R. Hyten, of Barrington, for appellee Raymond J. Espinoza, Jr.

Berle Schwartz, of Highland Park, for appellee Estate of Michelle Kolasinski, deceased.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The instant action arises from a collision between a pickup truck driven by Randy Anderson and a freight train owned and operated by the Elgin, Joliet and Eastern Railway Company (EJ&E). The plaintiffs, Raymond J. Espinoza, Jr., and Michelle Kolasinski, who were passengers in the truck, brought an action for negligence in the circuit court of Lake County against EJ&E. The trial court granted summary judgment in favor of EJ&E on all counts. The appellate court reversed the trial court (Nos. 2—93—0245, 2—93—0252 cons. (unpublished order under Supreme Court Rule 23)). We allowed EJ&E's petition for leave to appeal (145 Ill. 2d R. 315).

## FACTS

On March 24, 1989, at approximately 1:21 a.m., a pickup truck owned and driven by Anderson was struck at a railroad crossing in North Chicago, Illinois, by a freight train owned and operated by EJ&E. The weather conditions at the time of the accident were dry and clear. Prior to the collision, Anderson had been traveling westbound on 22nd Street, which consists of two westbound and two eastbound lanes. The 22nd Street crossing is equipped with two sets of ground and overhead cantilever-mounted flashing light signals and a warning bell, which were functioning at the time of the accident. Additionally, the crossing has circular caution railroad signs and standard pavement railroad warning markings. There are no gates at the crossing. Upon approaching the intersection, Anderson observed red flashing warning lights and two other vehicles that disregarded the warnings. Anderson likewise disregarded the warning lights at the crossing. Anderson's pickup truck was subsequently struck by the EJ&E train on its left side behind the cabin area. Raymond Espi-

noza, Jr., who was riding in the bed of the pickup truck at the time of the collision, was seriously injured. Michelle Kolasinski, who was riding in the cab of the pickup truck, was fatally injured.

Raymond Espinoza, Jr., filed a complaint against Anderson and EJ&E alleging negligence. Sherri Kolasinski, individually, and James Kolasinski, individually and as administrator of the estate of Michelle Kolasinski, filed an amended complaint against Anderson and EJ&E, alleging negligence, and against other named defendants, alleging violations of the Illinois Dramshop Act. The dramshop defendants were subsequently dismissed with prejudice pursuant to a stipulation.

Following dismissal of the dramshop defendants, plaintiffs' joint motion to consolidate their respective complaints was granted. The consolidated complaints alleged *inter alia* that EJ&E carelessly and negligently (1) failed to apply the brakes of the train to avoid colliding with Anderson's vehicle; (2) operated the train without lighting the headlight on the locomotive so that the train was not visible in the nighttime to an ordinarily observant person; (3) failed to operate the whistle on the train so as to sound a warning of the approach of the train in a timely fashion; and (4) failed to install crossing gates at the crossing to block westbound vehicles from entering the crossing area.

EJ&E moved for summary judgment. The trial court ultimately granted summary judgment in favor of EJ&E on all issues and allegations. Plaintiffs appealed from the trial court's grant of summary judgment in favor of EJ&E on all counts. Anderson was not a party to the appeal.

The appellate court reversed the trial court's grant of EJ&E's motion for summary judgment and remanded the cause for further proceedings, finding that the record contained genuine issues of material fact regarding:

(1) the EJ&E train crew's attempt to slow the train in order to avert a collision with the pickup truck; (2) the adequacy of the train's warning devices; and (3) the adequacy of the warning devices installed at the crossing. The appellate court held that the testimony of the EJ&E employees as well as Anderson raised material issues of fact as to whether EJ&E breached duties owed to the plaintiffs and whether those breaches may have been *a* or *the* proximate cause of the plaintiffs' injuries. The appellate court found that reasonable minds could differ as to whether the railroad is liable to the plaintiffs for injuries incurred in the incident. As stated, we granted EJ&E's petition for leave to appeal (145 Ill. 2d R. 315).

## ANALYSIS

The sole issue before this court is whether the trial court properly granted summary judgment in favor of EJ&E. Our review is limited to examining the crew's actions in slowing the train prior to the collision, the adequacy of the train's warning devices, and the adequacy of the warning devices at the crossing.

As in all cases involving summary judgment, we conduct a *de novo* review of the evidence in the record. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.) Specifically, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and must construe them strictly against the movant and liberally in favor of the nonmoving party. (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11; *Outboard*, 154 Ill. 2d at 131-32.) Summary judgment is appropriate when there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt. (*Hoover*, 155 Ill. 2d at 410; *Outboard*, 154 Ill. 2d at 102.) Although summary judgment is encouraged to aid the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. (*Hoover*, 155 Ill. 2d at 410; *Purtill v. Hess* (1986),

111 Ill. 2d 229, 240.) Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Hoover*, 155 Ill. 2d at 411; *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358.

Plaintiffs here have alleged negligence on the part of EJ&E. To state a cause of action for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.) The existence of a duty is a question of law for the court to decide. (*Wojdyla*, 148 Ill. 2d at 421; *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) The issues of breach and proximate cause are factual matters for a jury to decide, provided there is a genuine issue of material fact regarding those issues. (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 382.) If the plaintiff fails to establish an element of the cause of action, summary judgment for the defendant is proper. *Pyne*, 129 Ill. 2d at 358.

With these principles in mind, we examine whether summary judgment is appropriate in the instant case.

### I. Crew's Actions

The first issue before this court is whether a genuine issue of material fact exists regarding the EJ&E train crew's attempt to slow the train so as to avoid a collision with Anderson's vehicle. EJ&E argues that it did not breach any duty since the undisputed facts establish that the engineer operated the brakes in a reasonable manner under the circumstances. EJ&E claims it is "absurd and impractical" to require a train to apply its "emergency brakes each and every time a motorist violates the [train's] right of way."

A railroad has a duty to exercise due care to avoid a collision. (See *Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 511-12.) Although a train engineer is not required to anticipate and guard against the possibility that a motorist may disregard a warning and enter a crossing (*Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 366; *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1991), 212 Ill. App. 3d 732, 737), the engineer is required to stop the train when it becomes apparent that the motorist has not heard or will not heed the signal given by the train. *Robertson v. New York Central R.R. Co.* (1944), 388 Ill. 580.

In this case, there is evidence in the record that raises a material issue of fact as to whether the train crew breached its duty to avoid a collision, thereby proximately causing the plaintiffs' injuries by its failure to apply the emergency brakes when it became apparent that Anderson would not heed the warning signals. This issue is evident in the statements made by various members of the EJ&E train crew during their respective depositions. The crew in the lead engine consisted of Donald Dipert, the conductor, Lee Wayne Syler, the engineer, and Donald Kolofa, the driver of the train.

All three crew members admitted to observing three vehicles, including Anderson's pickup truck, ignore operational warning signals at the 22nd Street crossing. Kolofa testified that he first observed the three vehicles approach the crossing when the train was 300 feet from the crossing. The first two vehicles were traveling alongside each other and Anderson's pickup truck followed behind them within seconds. Syler testified that the first two vehicles were traveling 25 to 30 miles per hour and did not stop prior to entering the crossing. Kolofa stated that he noticed the two vehicles cross the intersection and observed Anderson's pickup truck approach the intersection. According to Kolofa, Anderson's

pickup truck did not slow or stop. Nevertheless, Kolofa did not brake or slow the train prior to impact. It was not until after impact that he applied the emergency brakes.

In addition to Kolofa, Dipert stated that the train was 200 feet from the crossing when he first saw two vehicles approach the crossing. According to Dipert, he then observed Anderson's vehicle when the train was 150 feet from the crossing. Dipert stated that Anderson's vehicle did not hesitate or stop even though the train's whistle was blowing and the bell was ringing. Anderson continued traveling 25 miles per hour. When the train was 100 to 125 feet from the intersection, Dipert yelled, "I think we're going to hit him. I don't think he's going to clear." The crew, however, took no immediate affirmative action to slow or stop the train. Instead, the train continued to travel 28 miles per hour. Dipert testified that he was concerned about having a collision with all three vehicles.

The facts in the record also suggest that the train crew could have avoided the collision with Anderson's vehicle. A.O. Pipkin, Jr., plaintiffs' liability expert, indicated that the collision could have been avoided if the emergency brake had been applied at approximately 250 feet before the intersection. As previously noted, Kolofa observed the three vehicles approach the crossing when the train was 300 feet from the crossing. Pipkin opined, however, that the emergency brakes were not applied until 500 to 600 feet after the crossing.

In view of the foregoing, a genuine issue of material fact remains regarding whether the crew could have or should have applied the emergency brakes in time to avoid the collision with Anderson's vehicle. Accordingly, we conclude that there is a triable issue of fact whether EJ&E breached its duty to avoid a collision, which proximately caused the plaintiffs' injuries.

## II. Adequacy of Warnings

### A. *Sole Proximate Cause*

We next consider whether there is a genuine issue of material fact with respect to the adequacy of the warning devices on the train and at the crossing. Before addressing the adequacy of the warnings, we must examine EJ&E's claim that Anderson's violation of the warnings at the crossing was the sole proximate cause of the plaintiffs' injuries. EJ&E points out that Anderson pleaded guilty to reckless homicide for driving his pickup truck into the path of the train notwithstanding the warnings. EJ&E also contends that Anderson violated section 11—1201(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 11—1201(a)) by disregarding the known warning of the red flashing lights at the 22nd Street crossing. EJ&E argues that, because section 11—1201 imposes a legal duty upon a motorist to stop before crossing and not to proceed until the train passes, Anderson breached his duty of care to his passengers. According to EJ&E, Anderson's breach of this duty was the sole proximate cause of the accident. EJ&E cites *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1991), 212 Ill. App. 3d 732, and *Hamilton v. Atchison, Topeka & Santa Fe Ry. Co.* (1988), 175 Ill. App. 3d 758, in support of its view. Both cases, however, are distinguishable from the case at bar.

In *Sheahan*, a car was struck by a train at a railroad crossing. The operator of the train stated that, as the train entered the crossing, he heard the sound of the cab colliding with a vehicle. The passenger stated that he pleaded with the driver not to try and beat the train; however, the driver went through the crossing. It was alleged that the train failed to brake in a timely manner. In *Sheahan*, there was no evidence that the train operator saw the vehicle prior to impact. The court affirmed summary judgment in favor of the railroad, find-

ing that the driver's failure to heed the warnings was the sole and proximate cause of the accident. (*Sheahan,* 212 Ill. App. 3d at 737-38.) *Sheahan* is distinguishable from this case because here there is a question as to whether the train operator saw several vehicles enter the crossing prior to impact and yet failed to apply the brakes in a timely manner.

*Hamilton* is likewise distinguishable. In *Hamilton,* the engineer and brakeman observed a car stopped at a crossing. When the train was 200 to 300 feet from the crossing, the train crew observed the car go around the lowered gates. The engineer *immediately* engaged the emergency brakes. The plaintiff's decedent was a passenger in the car. The court affirmed summary judgment in favor of the defendant since the driver's act in circumventing the crossing gates was the proximate cause of the accident. (*Hamilton,* 175 Ill. App. 3d at 761.) In *Hamilton,* however, the evidence clearly established that the train crew applied the emergency brakes immediately upon the car's entry onto the tracks. Here, on the other hand, it appears that the brakes were applied after impact.

In the instant case, therefore, it is not evident that Anderson's failure to exercise due care was the sole proximate cause of the accident. Anderson's negligence does not prevent a finding of negligence on the part of EJ&E. It is a fundamental principle that there may be more than one proximate cause of an injury. (*Lee,* 143 Ill. App. 3d at 512, citing *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 17.) The facts in this case are not sufficiently one-sided that the court can determine, as a matter of law, that Anderson was the sole proximate cause of this accident. (*Cf. Thompson v. County of Cook* (1993), 154 Ill. 2d 374.) Therefore, the fact that Anderson's negligence may have partially caused the accident does not preclude a finding that the EJ&E crew had an

opportunity to avoid the accident and that their failure to do so constitutes a proximate cause of plaintiffs' injuries.

## B. *Devices on the Train*

Next, we address whether there is an issue of material fact regarding the operation of the train's warning devices at the time of the collision. Specifically at issue in this case is the operation of the train's headlight and whistle.

EJ&E argues that the train employed all of its warning devices prior to the collision and thereby performed its duty to warn of its approach. (See *Sheahan*, 212 Ill. App. 3d at 735.) EJ&E contends that the train's headlight was illuminated and that the whistle was blowing.

The evidence, however, is conflicting as to whether the headlight and whistle were operating. Kolofa stated in his deposition that, on the evening of the accident and before the train set out from its yard, he checked the lights, bell, and whistle, all of which were working. According to Kolofa, the headlight was on and the whistle was blowing prior to the train's approach to the 22nd Street crossing. Dipert and Syler agreed that the headlight was on and the whistle was blowing as the train approached the crossing. Anderson, on the other hand, testified in his deposition that he stopped 5 to 10 feet from the crossing, looked both ways, but did not see the headlight on the train. He also indicated that he heard no whistle. Since two prior vehicles had stopped and gone through the crossing, Anderson believed the crossing lights were "messed up." Anderson therefore proceeded to go slowly onto the tracks and did not hear the train's whistle until seconds before impact. Anderson stated that as a result he never saw the train until immediately prior to impact.

EJ&E responds that the law does not tolerate the absurdity of permitting a motorist to say he looked and

did not see the approaching train, when, had he looked, he would have seen it. EJ&E relies on *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 169, and *Tucker v. New York, Chicago & St. Louis R.R. Co.* (1957), 12 Ill. 2d 532, 535, for this proposition. Both cases, however, are distinguishable since they rely on the assumption that the light and whistle were operational, whereas here, the parties dispute whether either were operating at the time of the accident.

Accordingly, there are disputes of material fact as to the operation of the headlight and whistle prior to the collision. If EJ&E failed to employ these warning devices, a jury could find that it breached its duty to warn of an approaching train. This failure to warn may have been one of the proximate causes of the plaintiffs' injuries.

## C. *Devices at the Crossing*

The final issue concerns the adequacy of the warning devices installed at the 22nd Street crossing. The plaintiffs argue that EJ&E was negligent in failing to install crossing gates. According to the plaintiffs, the lack of gates rendered inadequate the warning devices at the 22nd Street crossing.

A railroad has a duty to provide adequate warning devices at its crossings. (*Sheahan*, 212 Ill. App. 3d at 735, citing *Langston v. Chicago & North Western Ry. Co.* (1947), 398 Ill. 248.) As noted, the 22nd Street crossing had two sets of ground and overhead cantilever-mounted flashing warning lights, a warning bell, circular caution railroad signs and standard pavement railroad warning markings. Chris Lajcin, a signal supervisor for the EJ&E, stated in an affidavit that all warnings were functioning properly at the time of the accident. Additionally, Anderson, at his deposition, admitted to seeing the crossing lights flashing. Consequently, the record shows that the warnings existent at the 22nd Street

crossing were operating properly at the time of the accident. The issue, then, is whether EJ&E owed a duty to provide *additional* warning devices, such as crossing gates.

EJ&E argues that, as a matter of law, it owed no duty to plaintiffs to install crossing gates by virtue of the Illinois Commercial Transportation Law (Transportation Law) (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 18c—1101 *et seq.*). EJ&E contends that section 18c—7401(3) of the Transportation Law (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 18c—7401(3)) creates a conclusive legal presumption that the warning devices at the 22nd Street crossing are adequate and appropriate.

The Transportation Law authorizes the Illinois Commerce Commission (Commission) to require the installation of warning devices at railroad crossings. In pertinent part, section 18c—7401(3) provides:

"The Commission shall have power, upon its own motion, or upon complaint, and after having made proper investigation, to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night or other protective devices in order to promote and safeguard the health and safety of the public. *Luminous flashing signal or crossing gate devices installed at grade crossings, which have been approved by the Commission, shall be deemed adequate and appropriate.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, par. 18c—7401(3).)

We interpret the relevant language of section 18c—7401(3) as providing that once the Commission has investigated a crossing and has approved the installation of a luminous flashing signal or crossing gate device, then the installation of that device shall be deemed adequate and appropriate. A conclusive legal presumption is created which prevents plaintiffs from arguing that the railroad should have installed other warning devices. See *Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 465-66.

Our interpretation is buttressed by the comments made by Representative Vinson, who was the House sponsor of the bill that added the language at issue. (Pub. Act 82—763, eff. January 1, 1983 (amending sections 57 and 58 of the Illinois Public Utilities Act, which was the precursor of the Transportation Law).) Representative Vinson explained: "The purpose of the Bill is simply to say that after the Commerce Commission has investigated and ordered the installation of a particular kind of signal, then ... that is conclusive on what kind of signal ought [to] be installed at that crossing. The railroad can install no other signal, by law, because of the order of the Commerce Commission." 82d Ill. Gen. Assem., House Proceedings, April 22, 1982, at 118.

Nevertheless, the plaintiffs allege that section 18c— 7401(3) cannot be applied in the instant case. According to the plaintiffs, the Commission has not yet made an investigation and determination that the warning devices installed at the 22nd Street crossing are adequate and appropriate. The plaintiffs contend that the investigation by the Commission must occur after January 1, 1986, the effective date of the Transportation Law. We disagree.

The Transportation Law provides that certain devices approved by the Commission shall be deemed adequate and appropriate. By its plain language it applies to any Commission investigation and approval. It does not restrict its application to investigations and approvals that occurred after a certain date, as plaintiffs argue.

The legislative history of the Transportation Law supports our conclusion. The effect of the Commission's action is explained as follows:

"Representative Kane: So basically, all this does is apply to the case where the Commerce Commission says that a flashing signal is okay, and a plaintiff would come

along later and allege that there should be a crossing gate ... practically.

Representative Vinson: That is ... in point of the numerousness of the suits, I am sure it would be, by far, the most prevalent case.

Representative Kane: Is there a time limit in the Bill so that if the Commerce Commission said six years ago that flashing signals are okay, and since then, the ... say the street has been improved, and it is now a four-lane instead of a two-lane. And the Commerce Commission has not been back. Does that absolve the railroad from taking the extra precaution of putting in a gate?

Representative Vinson: There is no time limit in the Bill.

Representative Kane: So, in that case, it would protect the railroad from that particular situation.

Representative Vinson: Yes, it would protect the railroad in that situation.

Representative Kane: So the railroad, when the crossing is upgraded, this would absolve the railroad from upgrading the protection.

Representative Vinson: In the case you just ... you described, the railroad would be absolved." (82d Ill. Gen. Assem., House Proceedings, April 22, 1982, at 120.)

In considering Representative Vinson's comments, it is apparent that the legislature intended that Commission investigations and approvals that occurred prior to January 1, 1986, would be sufficient to create the legal presumption.

The record in this case establishes that the Commission has made the requisite investigation and approval pursuant to the Transportation Law. In 1965, the Commission entered an order that cantilever-mounted flashing light signals be installed at the 22nd Street crossing. The certified records of the Commission also show that, in 1981, a member of the Commission staff specifically inspected the 22nd Street crossing to determine whether crossing gates were necessary. Bernard Morris, chief railroad engineer for the Commission, stated that, as a

result of the 1981 inspection, he determined that crossing gates were not necessary. According to Morris, the warning signals at the 22nd Street crossing were determined by the Commission to be adequate and appropriate. He therefore concluded that the warning devices existent at the crossing remained adequate and appropriate at the time of the accident since the Commission order from 1965 was still in effect.

Having established that the Commission found the warning devices at the 22nd Street crossing to be adequate and appropriate, this determination is legally conclusive pursuant to the Transportation Law. As a result, the plaintiffs are barred from contesting the adequacy and appropriateness of the warning devices at the 22nd Street crossing. EJ&E therefore had no duty to provide additional warnings on the date of the accident. Thus, EJ&E is entitled to summary judgment with respect to the adequacy of the warning devices installed at the 22nd Street crossing.

## CONCLUSION

For the reasons stated, there exists a genuine issue of material fact regarding both the EJ&E train crew's attempt to avoid the collision and the adequacy of the warning devices on the train. This court therefore finds that triable issues of fact remain regarding whether EJ&E fulfilled all aspects of its duty under the circumstances, and if it did not, whether these alleged breaches proximately caused plaintiffs' injuries. We further find, however, that there is no genuine issue of material fact with respect to the adequacy of the warning devices at the crossing. On this issue, summary judgment in favor of EJ&E is warranted. Accordingly, we affirm in part and reverse in part the judgment of the appellate court, affirm in part and reverse in part the judgment of the

circuit court, and remand the cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court affirmed in part
and reversed in part;
circuit court affirmed in part
and reversed in part;
cause remanded.*