FIFTH DIVISION
March 24, 2006

No. 1-05-0424

| | | |
|---|---|---|
| STEINER ELECTRIC COMPANY, an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Honorable |
| NULINE TECHNOLOGIES, INC., an Illinois Corporation, | ) ) | Paddy McNamara, Judge Presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

This case is a collection action involving nonpayment for goods invoiced and received. Defendant, NuLine Technologies, Inc. (NuLine), appeals from the orders of the trial court granting summary judgment to plaintiff, Steiner Electric Company (Steiner) and awarding Steiner's attorney fees and court costs.[1] We affirm.

---

[1]Supreme Court Rule 341(e)(7) provides that an appellant's brief "shall contain" "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 188 Ill. 2d

1-05-0424

---

R. 341(e)(7).  NuLine has not addressed the order awarding attorney fees in its briefs.

Thus, we consider this argument waived pursuant to Supreme Court Rule 341(e)(7) and

we need not address it. *American Service Insurance Co. v. Pasalka,* No. 1-04-3571 (Ill.

January 26, 2006); *Mercury Indemnity Co. of Illinois v. Kim,*  358 Ill. App. 3d 1, 18, 830

N.E.2d 603, 617 (2005).

BACKGROUND

Steiner is engaged in the sale and distribution of electrical supplies and equipment. From approximately March 31, 2000, through December 31, 2002, Steiner, at the oral request of NuLine, sold and delivered various electrical supplies and equipment to NuLine. On February 7, 2003, Steiner filed a verified complaint for damages against NuLine.[2]

Steiner alleged in its complaint that when NuLine orally requested that Steiner sell and deliver various products to NuLine, it agreed to pay Steiner at its then prevailing prices for such products within 30 days after NuLine's receipt. Steiner attached invoices and debit memos to its complaint, showing an indebtedness of $53,989.56. According to the terms of the invoices, NuLine allegedly agreed to pay finance charges of 1.5% per month on all past-due accounts, as well as Steiner's costs of collection, including its attorney fees and expenses. After allowing all credits and deductions as of June 11, 2003, Steiner alleged that there was due and owing $118,002.09, which included the unpaid principal of $53,989.56, accrued finance charges of $64,012.53, through and including June 11, 2003, and a finance charge which continued to accrue at the rate of $7.19 *per diem* after June 11, 2003.

NuLine, in its answer, denied that it agreed to pay Steiner for all such products at its then prevailing prices and, instead, stated that many of the purchases were negotiated at a discount. Along with its answer denying most of the allegations, NuLine filed an affirmative defense for

---

[2]Steiner later filed an amended complaint on June 11, 2003.

setoff alleging that some of the invoices exceeded the amount of NuLine's purchase orders and that NuLine had returned items for which Steiner had not issued credit.

During discovery, Steiner issued a lengthy request to admit facts containing 1,134 individual requests.[3] In response, NuLine submitted an itemized spreadsheet of the invoices and debit memos that set forth explanations as to why or why not NuLine owed the specific amounts that Steiner claimed. The spreadsheet was verified by NuLine's accounts payable manager, Patricia Rauth.[4]

---

[3] While the number may indicate that this was an onerous burden, we note that the request contained simple questions, although repetitive, and mainly included the same or similar questions regarding each and every individual invoice that had been generated during the parties' relationship. The request asked whether, *e.g.*, the invoice attached to the complaint was a true and correct copy, Steiner sent NuLine the invoice on a certain date, NuLine received the invoice within seven days, NuLine had contacted Steiner requesting it to sell and deliver the specific products depicted in the invoice, NuLine agreed to pay for the specific products after it received them, NuLine agreed to pay the price listed in the invoice, NuLine received and accepted the products, NuLine then sold the products to a third party, NuLine did not pay Steiner, NuLine owed a finance charge, etc. The request also included questions relating to finance charges and debit memos.

[4] NuLine subsequently submitted an updated spreadsheet in which it revised some of its previous explanations and position on whether payment was due on certain disputed invoices.

1-05-0424

Steiner took Rauth's deposition, as well as the depositions of NuLine's president, Robert Traub, and NuLine's purchasing manager, Janet Camarata. In the depositions, all three testified that they knew of no agreement which authorized the credits or offsets that NuLine claimed.

During her deposition, Rauth also admitted that she was not involved in the purchasing, return or pricing of materials that NuLine purchased. She further admitted that she had no involvement with the approval of payments to Steiner or any matters related to handling or finance charges. Additionally, she testified that she had no personal knowledge regarding NuLine's claims for credits, discounts and offsets or any related agreements including any purported agreement between Steiner and NuLine permitting NuLine to take a 2% discount off the gross amount of any invoice. Rauth also admitted that she had no authority from Steiner to take 2% discounts off the gross amount of any invoice or to take accounts payable adjustments or so-called "APA" discounts. She acknowledged that NuLine took unauthorized discounts for freight, handling, restocking and pricing. Rauth further stated that Traub was the person who was responsible for the pricing of materials ordered from Steiner and the approval of payments to Steiner.

Traub testified in his deposition that NuLine took unauthorized discounts for freight, handling, restocking and pricing. He also stated that he knew of no document or agreement

This updated spreadsheet was also verified by Rauth.

which authorized NuLine to take 2% discounts off the gross amount of any invoice. He further admitted that NuLine had accepted products from Steiner for which NuLine had not paid.

Camarata also testified in her deposition that she had no personal knowledge of the pricing of materials purchased by NuLine from Steiner or of any document or agreement authorizing NuLine to take a 2% discount off the gross amount of NuLine's invoices from Steiner.

Steiner filed its motion for summary judgment on August 6, 2004. Steiner asserted that there was never any agreement that NuLine could take the discounts that it was routinely and arbitrarily taking and that NuLine's claims for credits and offsets lacked any basis. In support of its argument, Steiner relied upon (1) the deposition testimony, previously discussed, of Rauth and Traub; (2) Steiner's request for admission of facts, as well as NuLine's response; and (3) the affidavit of Steiner's credit manager, Joe Dible, which Steiner attached to its motion.

In his affidavit, Dible stated the following:

(1) There was no written or oral agreement between Steiner and NuLine that authorized NuLine to take a 2% discount off the gross amount of the invoices issued to NuLine;

(2) There was no written or oral agreement between Steiner and NuLine that provided that NuLine was not obligated to pay freight, restocking or handling charges on materials sold and delivered, finance charges on past-due invoices, or Steiner's costs on collections;

(3) NuLine never objected to any of the terms and conditions contained in

6

the invoices issued by Steiner to NuLine; and

(4) Notwithstanding Steiner's oral and written demands on NuLine to pay all amounts due it, NuLine has failed and refused to pay those amounts in breach of the oral agreement and as required under the invoices.

NuLine filed a written response to Steiner's motion for summary judgment which was accompanied by NuLine's spreadsheet, NuLine's answer and affirmative defenses, portions of Rauth's and Camarata's deposition transcripts, and Rauth's affidavit. Rauth stated in her affidavit that NuLine was owed refunds for returned materials and overbillings. Rauth also stated in her affidavit that NuLine had claimed these setoffs as affirmative defenses in its answer to the amended complaint and that information concerning the setoffs was provided to Steiner as part of NuLine's response to Steiner's request to admit. NuLine argued that the spreadsheet refuted the amounts claimed and that NuLine was entitled to certain credits for materials NuLine returned to Steiner as set forth in NuLine's affirmative defense.

Steiner filed a reply brief, along with a motion to strike Rauth's affidavit for its failure to comply with Illinois Supreme Court Rule 191 (Official Reports Advance Sheet No. 8 (April 17, 2002), R.191, eff. July 1, 2002) (Rule 191). Steiner argued that Rauth's affidavit should be stricken because, like NuLine's affirmative defenses, it contained generalized conclusions and did not set forth any facts to support her claim. Steiner also filed a supplemental affidavit of Dible.

NuLine responded to the motion to strike Rauth's affidavit, arguing that the requisite facts were contained in NuLine's answer, affirmative defenses and answers to the request to admit

facts that were attached as exhibits to the response in opposition to the motion for summary judgment and incorporated by reference into Rauth's affidavit.

NuLine did not take the deposition of Dible, who had verified Steiner's complaint and who had also provided the two affidavits in support of Steiner's motion for summary judgment. NuLine took the depositions of only two Steiner representatives, Tom Treichel and Daniel White.

On November 22, 2004, the trial court granted Steiner's motion to strike the affidavit of Rauth and Steiner's motion for summary judgment. On December 14, 2004, the trial court denied NuLine's motion for reconsideration. On December 30, 2004, the court issued an order granting Steiner its attorney fees and costs. NuLine now appeals.

ANALYSIS

Our standard of review of an order granting summary judgment is *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323, 1326 (1995). We must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and construe them strictly against the movant. *Espinoza*, 165 Ill. 2d at 113, 649 N.E.2d at 1326. Summary judgment is properly granted where the pleadings, depositions, admissions, affidavits and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30-31, 719 N.E.2d 756, 764 (1999). Although summary judgment has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the

moving party is clear and free from doubt.' " *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314, 318 (2001), quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986); see also *Robertson v. Sky Chefs, Inc.*, 344 Ill. App. 3d 196, 199, 799 N.E.2d 852, 855 (2003).

The only "evidence" presented by NuLine in opposition to Steiner's motion for summary judgment is the spreadsheet produced in response to the request to admit facts. The spreadsheet contained explanations as to why NuLine believed it did not have to pay the outstanding invoices and debit memos. Nonetheless, as Steiner aptly notes, nobody from NuLine has any personal knowledge of the facts alleged in the spreadsheet to support NuLine's conclusory claims that it does not have to pay the outstanding invoices and debit memos. This includes Patricia Rauth, who verified the spreadsheet.

Moreover, NuLine failed to provide a counteraffidavit to contradict the well-pleaded facts contained in the Dible's affidavit. Although NuLine submitted the affidavit of Rauth in support of its response to Steiner's summary judgment motion, the trial court properly struck Rauth's affidavit for failing to comply with Rule 191.

Rule 191 provides, in pertinent part, that "[a]ffidavits in support of and in opposition to a motion for summary judgment * * * shall not consist of conclusions but of facts admissible in evidence." Official Reports Advance Sheet No. 8 (April 17, 2002), R.191, eff. July 1, 2002; see also *Roe v. Jewish Childrens' Bureau of Chicago*, 339 Ill. App. 3d 119, 128, 790 N.E.2d 882, 890 (2003) (affidavits offered in support of or in opposition to a motion for summary judgment that merely set forth legal conclusions or opinions without stating supporting facts are insufficient and must be stricken). Rauth stated in her affidavit, "NuLine is owed $51,622.30 for

materials it returned to Steiner for which it has not received credit." She also stated that "NuLine is owed $71,484.12 in credit for over billings on invoices." However, the affidavit failed to provide any facts or admissible evidence to support these conclusory statements. Rauth failed to aver, much less establish with competent admissible facts, the basis of NuLine's authority to claim these credits. The trial court here correctly ruled that Rauth's affidavit failed to comply with Rule 191(a) because Rauth's affidavit contained mere legal conclusions and opinions. The affidavit failed to set forth with particularity any facts upon which her conclusions were based.

Furthermore, Rauth had no personal knowledge of the matters contained in her affidavit. In her deposition, Rauth stated that she did not know of any agreement that would allow NuLine to take deductions for freight charges. She also stated that she did not know of any agreement that would allow NuLine to take deductions or discounts for handling charges, or that would allow NuLine to take discounts or deductions for restocking charges. Rauth has not alleged that she negotiated any agreement to receive credit for returned materials. In her deposition, she admitted that she had no involvement with the purchasing or return of materials. Finally, she admitted that there was no agreement authorizing NuLine to take accounts payable adjustments and, instead, it was her unilateral decision to do so. Indeed, when asked the basis of her authority to take these deductions, she answered, "None, actually."

Although Rauth holds the title of "Accounts Payable Manager," her deposition testimony demonstrated that she has an utter lack of knowledge regarding NuLine's claims for credits, discounts and offsets. NuLine's purported "disputes" are based upon specific circumstances of which she admittedly had no knowledge. Rauth's earlier deposition testimony as to her complete

10

lack of knowledge constitutes a binding judicial admission, which cannot be controverted on appeal or used to create a question of fact on summary judgment. See, *e.g.*, *Hansen v. Ruby Construction Co.*, 155 Ill. App. 3d 475, 480, 508 N.E.2d 301, 303-04 (1987) (unequivocal assertions made in a deposition constitute binding judicial admissions that a party may not subsequently contradict in order to create a factual dispute). A party deponent cannot avoid the consequences of a deposition by subsequently changing or reconstructing testimony. *In re Estate of Rennick*, 181 Ill. 2d 395, 407, 692 N.E.2d 1150, 1156 (1998).

In her deposition, Rauth stated that "[t]he agreements were all between Steiner and Bob Traub." As the trial court correctly noted, this statement implies that if there was any agreement, it is Traub who would be in possession of the material facts to support its existence. Nonetheless, no affidavit of Traub was submitted by NuLine in support of its response to Steiner's summary judgment motion. Thus, without the affidavit of Rauth, the facts set forth in Dible's affidavit stand uncontested.

NuLine asserts, however, that its answer to Steiner's requests to admit facts was part of the record, that it created disputed issues of fact, and that the trial court erred in failing to consider it. We disagree. Assuming, without deciding, that NuLine's answer to Steiner's request to admit facts complied with Illinois Supreme Court Rule 216 (134 Ill. 2d R. 216), a party opposing a summary judgment motion cannot rely on its pleadings alone to raise issues of material facts. Our supreme court has explained that where the party moving for summary judgment supplies well-alleged facts in an affidavit that are not contradicted by counteraffidavit, such allegations must be taken as true, notwithstanding the existence of contrary averments in

1-05-0424

the nonmovant's pleadings which merely *purport* to establish *bona fide* issues of fact. *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500-01 (1971).

NuLine's answers to requests to admit facts are mere pleadings. See *Golf Trust of America, L.P. v. Soat*, 355 Ill. App. 3d 333, 336, 822 N.E.2d 562, 565 (2005) (request to admit and response are pleadings). Thus, NuLine cannot rely on its answer to Steiner's request to admit facts to counter the facts set forth in Dible's affidavit. The trial court correctly declined to consider NuLine's answer to Steiner's request to admit facts as competent factual evidence to create a genuine issue of material fact. Because those facts stand uncontested, the trial court correctly granted summary judgment in favor of Steiner.

For the foregoing reasons, we affirm the November 22, 2004, order of the circuit court of Cook County granting summary judgment.

Affirmed.

O'BRIEN and O'MARA FROSSARD, JJ., concur.

12