2020 IL App (3d) 190128

Opinion filed July 1, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| JP MORGAN MORTGAGE ACQUISITION CORP. and BAYVIEW LOAN SERVICING, LLC, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| DANNETTE BELL a/k/a Dannette C. Bell; JAMES B. BELL a/k/a James Bell; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants | ) ) ) ) ) ) ) | Appeal No. 3-19-0128 Circuit No. 10-CH-2728 |
| (James B. Bell, Defendant-Appellant; Steven Cole, Trustee of ALI (401K) FBO Steven Cole #7446080, Appellee). | ) ) ) | Honorable Roger D. Rickmon, Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Holdridge concurred in part and dissented in part, with opinion.

_____

**OPINION**

¶ 1    This appeal involves a 2006 mortgage agreement executed by a married couple, James and

Dannette Bell. In 2006, Mortgage Electronic Registrations Systems, Inc. (MERS), acting as

nominee for the original lender, filed a release and satisfaction of the Bells' 2006 mortgage

agreement and later recorded a certificate of error regarding the release and satisfaction. In 2010, MERS, acting as nominee for the original lender, assigned the original lender's interest, if any, in the 2006 mortgage agreement to JP Morgan Mortgage Acquisition Corp., who filed a foreclosure complaint in the same year. Eight years later, the trial court resolved cross-motions for summary judgment by entering summary judgment against James and in favor of Bayview Loan Servicing, LLC (Bayview).

¶ 2        On appeal, James requests a reversal of the trial court's rulings on the cross-motions for summary judgment.

¶ 3                                    I. BACKGROUND

¶ 4        On May 25, 2006, James and his wife, Dannette, executed a mortgage agreement as mortgagors and as tenants by the entirety. The lender was ResMAE Mortgage Corporation (ResMAE). ResMAE nominated MERS as the mortgagee for the lender.

¶ 5        On the same date, May 25, 2006, Dannette alone signed a note payable to ResMAE in the amount of $184,500, plus interest, secured by the mortgage agreement pertaining to the property commonly known as 1015 Sierra Court, University Park, Illinois, 60466 (property). James did not sign the note.

¶ 6        On June 12, 2006, MERS, as nominee for ResMAE, recorded the mortgage agreement dated May 25, 2006. The Will County Recorder time-stamped the mortgage agreement, identifying the mortgage agreement as document number 2006095856.

¶ 7        On June 30, 2006, MERS, as nominee for ResMAE, recorded a satisfaction of the Bells' mortgage agreement. The Will County Recorder time-stamped the satisfaction that released the Bells from their mortgage obligations. The Will County Recorder assigned document number 2006107810 to the satisfaction and release (release).

¶ 8    The release stated that ResMAE was the holder of the mortgage and had received full payment from James and Dannette. The release authorized and directed the Will County Recorder to "discharge the same upon the record of said mortgage."

¶ 9    On July 19, 2006, MERS, as nominee for ResMAE, recorded a document labeled as a certificate of error. The recorded certificate of error was assigned document number 2006095856 by the Will County Recorder. This certificate of error stated that MERS, as nominee for ResMAE, was making a "claim for itself and its successors and assigns, a continuing mortgage lien interest" under the mortgage agreement dated May 25, 2006. The certificate of error purported to rescind and disavow the prior recorded release, dated June 30, 2006, which MERS identified by reference to document number 2006107810.

¶ 10    On August 29, 2006, MERS recorded the May 25, 2006, mortgage agreement for a second time, and the Will County Recorder stamped the second recording of the mortgage agreement as document number 2006145083. The first page of the second recording of the mortgage agreement now bears both document number 2006145083, from the June 12, 2006, recording and document number 2006095856, from the August 29, 2006, secondary recording.

¶ 11    Several years later, on July 24, 2009, Dannette passed away. After Dannette's death, MERS, as nominee for the original lender, ResMAE, executed an assignment of the first recorded mortgage agreement, identified by MERS by reference to document number 2006095856, and Dannette's note, to JP Morgan Mortgage Acquisition Corp. (JP Morgan Acquisition). The first and only assignment of the original lender's interests was dated April 27, 2010.

¶ 12    On May 3, 2010, JP Morgan Acquisition, the original assignee, filed a complaint (foreclosure complaint) to foreclose upon the mortgage agreement. A copy of the mortgage

agreement and Dannette's note were attached to the foreclosure complaint. However, the assignment from the original lender to JP Morgan Acquisition was not attached as an exhibit to the foreclosure complaint.

¶ 13    The foreclosure complaint alleged that JP Morgan Acquisition was acting as the agent for the holder of both the mortgage agreement and Dannette's note. The foreclosure complaint alleged that James and Dannette were the current owners of the property and Dannette, alone, was personally liable for any deficiency under the terms of the mortgage agreement and the note. The foreclosure complaint alleged that the monthly payments, required by the 2006 mortgage agreement, ceased after January 2010.[1]

¶ 14                          A. Assignments After the Foreclosure Complaint

¶ 15    On October 20, 2014, JP Morgan Chase Bank, acting as the agent for JP Morgan Acquisition, executed an assignment of their interest in the first recorded mortgage (identified by MERS by reference to document number 2006095856, filed on June 12, 2006) and a purported interest in the second recorded mortgage (identified by MERS by reference to document number 2006145083) to the Christiana Trust.[2] The language of the assignment from JP Morgan Chase Bank, acting as the agent for JP Morgan Acquisition, to the Christiana Trust did not transfer an interest in Dannette's note.

¶ 16    On January 19, 2016, the language of the assignment from the Christiana Trust to Normandy Mortgage Acquisition Company, LLC (Normandy), purported to transfer an

---

[1]JP Morgan Acquisition's foreclosure complaint identifies the property's ZIP code as 60484, while the mortgage documents identify the property using a different ZIP code, namely, ZIP code 60466.

[2]The record does not contain a second assignment from MERS, as nominee for the original lender, ResMAE, to JP Morgan Acquisition dated after the second recording of the mortgage agreement, referenced as document number 2006145083. Based on this record, it does not appear that JP Morgan Acquisition had acquired any interest in document number 2006145083 to be assigned by JP Morgan Chase Bank, acting as the agent of JP Morgan Acquisition.

interest in Dannette's note together with the mortgage agreement, identified by both recording numbers. On January 19, 2016, Normandy executed an assignment to Bayview. This assignment included language identical to the prior assignment from Christiana Trust, which purported to transfer an interest in Dannette's note, an interest in the first recorded mortgage agreement, and a claimed interest in the second recording of the mortgage agreement.

¶ 17    On March 22, 2016, the trial court allowed a motion filed by JP Morgan Acquisition to substitute Bayview as plaintiff. On December 12, 2016, Bayview filed a motion to dismiss Dannette as a party defendant based on Dannette's death certificate.[3] On December 20, 2016, the trial court entered an order dismissing Dannette as a party defendant.

¶ 18                        B. 2017 Cross-Motions for Summary Judgment

¶ 19    On October 11, 2017, Bayview filed a motion for summary judgment, which was certified pursuant to section 1-109 of the Code of Civil Procedure (Code) (735 ILCS 5/1-109 (West 2016)), and various attached documents including, but not limited to, the affidavit of amounts due and owing, the foreclosure complaint, and the mortgage agreement and note. Bayview's 2017 motion for summary judgment was nearly identical to Bayview's prior 2016 motion for summary judgment, which was previously denied by Judge Lund. However, Bayview's 2017 motion for summary judgment included an additional discussion of James's affirmative defense claiming Bayview's lack of standing.

¶ 20    In support of both the 2016 and 2017 motions for summary judgment, Bayview asserted that the certificate of error legally rescinded the prior release. With respect to the 2016 motion for summary judgment, Judge Lund denied summary judgment in favor of Bayview after

---

[3]The record also contains a second dismissal of Dannette as a party defendant on March 6, 2018.

finding the material facts were not undisputed regarding the purportedly mistaken release. Further, Judge Lund stated:

"Plaintiff claims mistake and argues that the filing of the certificate of error rescinds the satisfaction. Plaintiff cites no law to support that argument. The court upon its own research cannot find law to support that argument."

Bayview's 2017 motion for summary judgment reasserted the same argument Judge Lund rejected, namely, that the certificate of error legally rescinded the original lender's mistaken release as a matter of law.

¶ 21    On December 19, 2017, James filed a verified amended answer and affirmative defenses to the foreclosure complaint. In his amended answer, James alleged that the 2006 mortgage agreement was for purposes of refinancing. James alleged that he and Dannette rescinded the mortgage agreement by e-mailing a notice of rescission to ResMAE within the three-day right of rescission period. According to James, the Bells repeatedly requested an acknowledgment from ResMAE, confirming that ResMAE received the notice of rescission. The Bells did not receive an acknowledgment from ResMAE but instead received the recorded release.

¶ 22    James's amended answer went on to raise the affirmative defenses of (1) accord and satisfaction, alleging that the release extinguished the mortgage; (2) lack of standing, alleging that only a released lien had been the subject of the assignment by MERS, acting as agent for the original lender, thus, subsequent assignees could not foreclose upon a released mortgage agreement; (3) and fraud, pertaining to several notices the original lender failed to disclose.

¶ 23    On the same date, James filed a cross-motion for summary judgment and attached the June 30, 2006, release recorded by MERS. James's cross-motion alleged that the release extinguished all obligations pertaining to the mortgage agreement and that the certificate of

error was an ineffective attempt to rescind the previously recorded release. As a result, James alleged that MERS, as nominee for ResMAE, transferred a released, worthless interest to JP Morgan Acquisition. Thus, Bayview had no standing to sustain the foreclosure action because their meaningless assignment traced back to JP Morgan Acquisition.

¶ 24     On February 6, 2018, Bayview filed a response to James's 2017 cross-motion for summary judgment. Bayview's response claimed that the totality of James's arguments were based on the release, the facts surrounding the release were uncorroborated and not supported by affidavit, the purported release was later corrected by the certificate of error, and James had presented no evidence to support his assertion that the mortgage was paid off and rightfully released.

¶ 25     On February 26, 2018, James filed a reply to Bayview's response to his 2017 cross-motion for summary judgment. James's reply asserted that his affirmative defenses and the amended answer to the foreclosure complaint was a verified pleading pursuant to section 1-109 of the Code and thus served as an affidavit for purposes of the summary judgment proceedings. 735 ILCS 5/1-109 (West 2018). James's reply further asserted that the certificate of error was not recognized by Illinois law and failed to meet any of the requirements of Rule 191, and, as such, was "an unqualified, unlawful and useless instrument in determining whether summary judgment should be issued in favor of [Bayview]." Ill. S. Ct. R. 191 (eff. Jan. 4, 2013).

¶ 26     On March 6, 2018, the trial court conducted a hearing on the pending 2017 cross-motions for summary judgment. Following the arguments, the trial court granted summary judgment in favor of Bayview and against James. The 2018 order granting summary judgment in favor of Bayview did not address whether the material facts were undisputed and did not recite the basis

for the trial court's legal conclusion. In addition, the trial court entered a judgment of foreclosure and sale.

¶ 27        On May 29, 2018, the trial court denied James's motion for clarification and request for findings of fact and determinations of law. The trial court also summarily denied defendant's motion to reconsider and motion for leave to file a second amended answer and affirmative defenses.

¶ 28        On June 28, 2018, the Will County Sheriff conducted a public sale of the property. Steven Cole, trustee of the ALI (401k), purchased the property. On July 19, 2018, Bayview filed a motion for a court order approving the sale and distribution of the property, an order of eviction, and an order for an *in rem* deficiency.

¶ 29        On January 22, 2019, the trial court entered an order approving the sheriff's report of sale and distribution and confirming the sale. Additionally, the trial court directed the Will County Sheriff to evict James from the property and entered an *in rem* deficiency judgment in the amount of $303,180.45. Subsequently, the trial court denied James's motions to vacate and his motion for rehearing.

¶ 30        On March 13, 2019, James filed a timely notice of appeal.

¶ 31                                    II. ANALYSIS

¶ 32        For purposes of review, we organize James's contentions of error into four separate sections in the analysis below. First, we address James's jurisdictional contentions.

¶ 33                        A. Necessary Parties/Subject Matter Jurisdiction

¶ 34        First, James argues that Dannette was a necessary party to the foreclosure action. James asserts that after the trial court granted Bayview's motion to dismiss Dannette as a named

defendant on December 20, 2016, the trial court lost subject matter jurisdiction over the action pursuant to *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526 (2010). Consequently, James asserts the trial court's judgments with regard to foreclosure are void.

¶ 35    Bayview responds to the issue of subject matter jurisdiction by arguing that Dannette was no longer a necessary party according to section 15-1501 of the Code. 735 ILCS 5/15-1501 (West 2018). In addition, Bayview relies on the First District's decision in *Deutsche Bank National Trust Co. v. Estate of Schoenberg*, 2018 IL App (1st) 160871, to support the argument that Dannette was not a necessary party.

¶ 36    James relies on the *McGahan* decision, where our supreme court clarified that all foreclosure proceedings are *quasi in rem* actions. *McGahan*, 237 Ill. 2d at 535. The *McGahan* court held that a mortgagee must name a personal representative for a deceased mortgagor in a mortgage foreclosure proceeding in order for the trial court to acquire subject matter jurisdiction. *Id*. at 528. However, when *McGahan* was decided, the Code was silent as to the requirements that follow the death of the mortgagor. See *id*. at 532-538. The Code has evolved throughout the years of this protracted foreclosure proceeding and now addresses situations with deceased mortgagors.

¶ 37    When the lawsuit was filed on May 3, 2010, the case law likely would have made Dannette, who passed away on July 24, 2009, or her estate, a necessary party. However, when Dannette was dismissed as a defendant six years later in 2016, the Code provided that the necessary parties to a foreclosure proceeding included:

> "only (i) the mortgagor and (ii) other persons (but not guarantors) who owe payment of indebtedness or the performance of other obligations secured by the mortgage and against whom personal liability is asserted." 735 ILCS 5/15-1501(a) (West 2016).

Further, at the time of Dannette's dismissal, section 15-1501(h)[4] clearly stated that

"the court is not required to appoint a special representative for a deceased mortgagor

for the purpose of defending the action, if there is a:

(1) living person, persons, or entity that holds a 100% interest in the property,

by virtue of being the deceased mortgagor's surviving joint tenant or surviving

tenant by the entirety[.]" *Id.* § 15-1501(h)(1).

Importantly, section 15-1501(h) further provides that "In no event may a deficiency judgment

be sought or entered in the foreclosure case *** against a deceased mortgagor." *Id.* §15-

1501(h).

¶ 38    In an appeal decided shortly after the trial court's ruling here, the First District observed

that it appeared the legislature enacted section 15-1501(h) to address a factual scenario similar

to the facts of this appeal. See *Schoenberg*, 2018 IL App (1st) 160871, ¶ 22. Here, it is

undisputed that James was the only surviving tenant by the entirety and the foreclosure

complaint named James as defendant. Therefore, though the trial court did not have the benefit

of a published decision from a reviewing court for guidance, the trial court correctly

determined subject matter jurisdiction existed in this case without the prior appointment of a

special representative for Dannette following her death.

¶ 39                              B. Release vs. Certificate of Error

¶ 40    In his 2017 cross-motion for summary judgment and now on appeal, James asserts the

original lender's decision to record a 2006 release of the mortgage agreement is outcome

---

[4]Bayview addresses the retroactive application of section 15-1501(h) in their brief on appeal. James does not take issue with the retroactive application of the amendments to the language of section 15-1501(h). Consequently, the amendments to section 15-1501(h) will be applied retroactively for purposes of this appeal.

determinative. Specifically, James states that the trial court should have granted summary judgment in his favor because the 2006 release permanently extinguished all of his mortgage obligations to the original lender as a matter of law. According to James, the released contractual obligations could not be revived by this particular certificate of error and any subsequent assignment of a previously released mortgage agreement was meaningless.

¶ 41    In response, Bayview claims the 2006 release was a mistake by MERS, acting as nominee for the original lender. Bayview contends the certificate of error recorded by MERS corrected the mistaken release, as a matter of law, and revived any arguably extinguished mortgage obligations for James.

¶ 42    It is interesting to note that the legal significance of the certificate of error recorded by MERS was raised in both Bayview's 2016 and 2017 motions for summary judgment with opposite results announced by two different judges. The record reveals that Judge Lund *denied* Bayview's 2016 request for summary judgment due to disputed material facts surrounding the original lender's release. Judge Lund carefully noted the material facts were in dispute, making summary judgment in favor of Bayview inappropriate. Further, Judge Lund stated:

> "Plaintiff claims mistake and argues that the filing of the certificate of error rescinds the satisfaction. Plaintiff cites no law to support that argument. The court upon its own research cannot find law to support that argument."

¶ 43    Bayview's cross-motion for summary judgment, filed on October 11, 2017, similarly raised the same argument based on the certificate of error that Judge Lund rejected. Nonetheless, when Judge Rickmon considered the same argument, he reached the opposite conclusion after finding the material facts surrounding the same release were *not* disputed.

However, Judge Rickmon did not recite his rationale for granting Bayview's 2017 cross-motion for summary judgment.

¶ 44     Here, it is factually undisputed that MERS, acting as nominee for the original lender, prepared and recorded two separate but contradictory documents within a relatively short time frame in 2006. James relies on the first document, the release, in support of his argument that the original lender was satisfied when the Bells fulfilled the terms of the 2006 mortgage agreement. On this basis, James submits the certificate of error is irrelevant. James contends the decision denying his 2017 cross-motion for summary judgment must be reversed based on the existence of the recorded release.

¶ 45     Conversely, Bayview relies on the certificate of error that followed the recorded release. Based on the certificate of error, Bayview argues the original lender was *not* satisfied with the Bell's performance of all terms of the 2006 mortgage agreement. Due to the subsequently drafted certificate of error, Bayview submits the release is irrelevant and the certificate of error controls. Bayview contends summary judgment in its favor must be affirmed based on the existence of the recorded certificate of error.

¶ 46     We conclude that the 2017 cross-motions for summary judgment cannot be resolved based solely on these two contradictory documents, both prepared and recorded by MERS, acting as nominee for the original lender. Nonetheless, summary judgment is not proper for either party at this stage of the proceedings since undisputed testimony about the business records from the original lender or the undisputed business records of the original lender themselves are not a part of this record. Therefore, we hold that the contradictory factual inferences arising from these documents embody the disputed material facts that make resolution by summary judgment in favor of either party unwarranted. See *Espinoza v. Elgin, Joliet & Eastern Ry Co.*,

165 Ill. 2d 107, 114 (1995) (supreme court stating "where reasonable persons could draw divergent inferences from the undisputed material facts *** summary judgment should be denied and the issue decided by the trier of fact").

¶ 47 Consequently, we vacate the 2018 order of the trial court granting Bayview's 2017 cross-motion for summary judgment. For the same reason, we affirm the 2018 order denying James's 2017 cross-motion for summary judgment.

¶ 48                                                  C. Standing

¶ 49 James contends the original lender's assignment to JP Morgan Acquisition transferred only previously released interests. We elect to recite James's argument pertaining to standing but cannot reach the merits for the reasons set forth below.

¶ 50 According to James, the record reveals it is undisputed that there was a single assignment from MERS to JP Morgan Acquisition before MERS recorded the mortgage agreement for a second time, after the certificate of error became part of the public record. James points out that the only assignment from JP Morgan Acquisition conveyed the released interests in the first recording of the mortgage agreement, document number 2006095856.

¶ 51 Obviously, the nature of interests conveyed by the chain of assignments in this case cannot be resolved until the disputed facts, concerning whether the release accurately or mistakenly reflects the status of the original lender's business records regarding this 2006 mortgage agreement, are resolved in the trial court. Without these factual findings from the trial court, we cannot resolve the issue of standing as a matter of law based on this record.

¶ 52                        D. Motion for Clarification and Leave to File

Second Amended Answer and Affirmative Defenses

¶ 53    Lastly, James contends the trial court abused its discretion by denying his request for clarification together with the denial of his second motion for leave to amend the answer and affirmative defenses filed on April 5, 2018. The issue of clarification is now moot since our court has vacated the trial court's judgment in favor of Bayview.

¶ 54    It appears the trial court recognized that granting summary judgment in Bayview's favor rendered James's pending motion for leave to file an amended answer and affirmative defenses moot. Having reversed the trial court's decision granting summary judgment in favor of Bayview, James's request for leave to file a second amended answer to the foreclosure complaint is no longer moot. Therefore, the matter is remanded with directions for the trial court to make a substantive ruling on the pending motion for leave to file a second amended answer and affirmative defenses.

¶ 55                                        III. CONCLUSION

¶ 56    Initially, we affirm the trial court's denial of James's motion for judgment on the pleadings and motion for summary judgment due to the existence of material disputed facts. Next, the trial court's decision granting summary judgment in favor of Bayview is reversed due to the existence of disputed material facts. Therefore, we vacate the trial court's subsequent orders, including the judgment of foreclosure, the order requiring James's eviction, and the order confirming and approving the sale following the judgment of foreclosure.

¶ 57    Further, the trial court's order denying James's motion for leave to file a second amended answer and affirmative defenses is vacated. The matter is remanded with directions for the trial court to reach the merits of James's motion for leave to file a second amended answer and affirmative defenses.

¶ 58    Finally, for purposes of clarification, we observe the issue of Bayview's standing remains unresolved. Consequently, the trial court is directed to resolve the issue pertaining to Bayview's standing, based on the language of the only assignment from the original lender to JP Morgan Acquisition, at the proper time following remand.

¶ 59    The judgment of the circuit court of Will County is affirmed in part, reversed in part, and vacated in part. Cause remanded with directions.

¶ 60    Affirmed in part, reversed in part, and vacated in part.

¶ 61    Cause remanded with directions.

¶ 62    JUSTICE HOLDRIDGE, concurring in part and dissenting in part:

¶ 63    I agree with the majority that the release and certificate of error are contradictory documents, but I find that the timing and content of the documents are dispositive and do not give rise to a material factual dispute. In May 2006, MERS recorded the mortgage agreement. In June 2006, MERS recorded the satisfaction of the Bells' mortgage agreement and released the Bells from their obligations related to the subject mortgage. In July 2006, MERS recorded a certificate of error, which stated that it rescinded and disavowed any prior recorded release of the mortgage, including the release recorded in June 2006, as it was recorded in error. The certificate of error speaks for itself: MERS erroneously recorded the release and attempted to timely fix that oversight with the recording of the certificate of error. Thus, I disagree with the majority's conclusion that the mere contradictory nature of these documents gives rise to a material factual dispute. For the foregoing reasons, I would affirm the trial court's judgment in its entirety.

**No. 3-19-0128**

| | |
|---|---|
| **Cite as:** | *JP Morgan Mortgage Acquisition Corp. v. Bell*, 2020 IL App (3d) 190128 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 10-CH-2728; the Hon. Roger D. Rickmon, Judge, presiding. |
| **Attorneys for Appellant:** | James B. Bell, appellant *pro se*. |
| **Attorneys for Appellee:** | Phil Schroeder, of McCalla Raymer Leibert Pierce, LLC, of Chicago, for appellee. |